Timothy Keith MERRITT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 5, 1965.

Frank E. Haddad, Jr., William J. Francis, Louisville, for appellant.

Robert Matthews, Atty. Gen., Martin Glazer, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

At about 2:30 on the morning of November 20, 1963, a bandit displaying what appeared to be a pistol held up Mrs. Nellie Ruth Freeman, the lone waitress on duty at a cafe in Louisville. She reported the incident to the police at once and later on that morning, from a "mug book" at police headquarters, pointed out Merritt, the appellant, as the culprit. Subsequently she again identified him in a police "line-up." He was then indicted for armed robbery, tried, convicted and sentenced to life imprisonment, KRS 433.140, from which disposition he prosecutes this appeal.

For all practical purposes Mrs. Freeman and the robber were the only persons present when the hold-up took place. The case against Merritt rested on Mrs. Freeman's identification of him. His defense was an alibi corroborated by his mother, who said he was home in bed at the time of the robbery. By remarkable coincidence it seems that he received a telephone call at home, several miles away, at just about that time. During the trial, however, he neither produced nor attempted to explain the absence of the nocturnal caller.

The first ground for reversal is that Merritt was entitled to a directed verdict because the evidence was insufficient as a matter of law to dispel a reasonable doubt. This contention centers on the reliability of Mrs. Freeman's identification. For example, she was unable to estimate the assailant's height, did not observe the color of his eyes, failed to notice certain scars on his face, etc. There were discrepancies between her testimony on the witness stand and the description contained in a report prepared by the police from information ostensibly given by her shortly after the crime was committed.[1]

1. Though inadmissible because Mrs. Freeman denied their accuracy and the officer who wrote the report did not testify, certain portions of the report were permitted to be brought into evidence without objection.

The other persons appearing in the police line-up with Merritt were dressed in prison garb, while he alone was in street clothing, giving rise to the power of suggestion.

■ We are aware that miscarriages of justice do occur as the result of mistaken identity, often induced by suggestive cir-cumstances. However, that very argument was made to the jury in this case. The jurors were as well advised of the possibility of error and gravity of consequences as we are. Mrs. Freeman was absolutely positive on the witness stand that Merritt was the man who robbed her. The possibility of error or her part was not sufficient, we believe, to destory the credibility of her identification or to establish reasonable doubt as a matter of law. Cf. Teer v. Commonwealth, 307 Ky. 602, 212 S.W.2d 106 (1948) ; Brown v. Commonwealth, 187 Ky. 829, 220 S.W. 1052 (1920).

■■ There have been many definitions of reasonable doubt, and we are not so presumptuous as to fancy we can coin a better one here. But it should be observed that a *reasonable* doubt cannot mean *any* doubt. There is *some* doubt about everything. A reasonable doubt is a substantial doubt, a real doubt, in that the juror must ask himself not whether a better case might have been proved, but whether after hearing the evidence the juror himself actually doubts that the defendant is guilty. In this case we cannot say that the evidence of guilt was so flimsy or unreliable that a reasonable man, after hearing it, must necessarily have been left with a reasonable doubt. Hence it was sufficient to support the verdict.

■ Mrs. Freeman described the weapon used by the robber as a pistol with white handles and a blue barrel. She was unfamiliar with guns and could not give the kind or calibre of the pistol, but thought it was not a toy. It is possible, of course, that it was a toy or simulated weapon rather than a deadly weapon in fact, and for that rea-

386 S.W.2d—46½

son it is submitted that the court should have given an instruction on simple robbery, KRS 433.120, as part of the whole law of the case. The Commonwealth on the other hand points out that KRS 433.140 refers to pistols, guns, other firearms, and other deadly weapons in the alternative, from which it is reasoned that any kind of pistol, including a toy, falls within the statute. But the aim and spirit of the law would scorn our taking refuge in semantics. We hold that within the context of this statute any object that is intended by its user to convince the victim that it is a pistol or other deadly weapon and does so convince him *is* one.

Merritt's trial was held February 25, 1964. His motion for new trial was filed March 2, 1964. The record shows that on March 3, 1964, his counsel filed an affidavit stating that a highly qualified psychiatrist offered as a witness for the defense was not permitted to testify. The affidavit recites that on February 25, 1964, at Our Lady of Peace Hospital the doctor examined Merritt using sodium amytol (commonly called "truth serum") and that it was his professional opinion that the patient was telling the truth when he said he did not commit the robbery in this case.

■ The affidavit was not countered by the Commonwealth. Nonetheless, the record itself suggests that this testimony actually was not offered during the trial. The transcript does not mention it, nor does the motion for new trial list among its grounds any exclusion of competent evidence. The latter omission alone waives any error in that connection. RCr 10.12 does not relieve a party from the necessity of preserving an error by motion for new trial unless the question has been theretofore raised by objection or motion. Cf. Hartsock v. Commonwealth, Ky., 382 S.W. 2d 861, 864 (1964). But even so, casting the technicalities aside, this court has held as recently as in 1960 that truth serum tests "have not attained sufficient scientific recognition of dependability and reliability" for admission in a criminal trial. Dugan v.

Commonwealth, Ky., 333 S.W.2d 755, 757 (1960). The affidavit in this case does not indicate that any scientific break-through has occurred in the interim.

The foregoing points of contention have been discussed because they may or will arise upon re-trial of the case, which must be granted for the reason that in our opinion comments made by the trial court in the course of the proceeding were, as a whole, prejudicial to the defendant and inconsistent with his right to a fair trial. They were:

1. On cross-examination of Mrs. Freeman:

Q 125– "Then, actually, you cannot say that this was a real gun, can you?"

"Mr. Fleming: Objection."

"By the Court: As far as she was concerned it was a gun and, looking down the barrel of a gun, she is not very apt to inquire what kind of gun it is or what caliber it is or whether it is a toy gun or not."

Q 132– "Then let me ask you this. It is your opinion that the defendant, Timothy Merritt, is the party who held you up?"

A – "No, it is not my opinion. I know that it was him."

"By the Court: She says he is the man. She doesn't say he looked like the man but she says he is the man."

"Mr. Francis: It is still an opinion and I am entitled to expand on that."

"By the Court: She did not say that it was her opinion, she says she knows it. That is her statement and you can't make her change that."

2. On cross-examination of Officer Cannon, in which defense counsel was testing the accuracy of the witness's memory concerning telephone calls:

Q 18– "How many other people did you talk to on November 22d?"

A – "I don't have any idea."

Q 19– "How many people did you talk to on November 21st."

A – "I don't have any idea."

"By the Court: That's silly. You can't tell how many you talked to."

"Mr. Francis: It might be silly but it goes to establish that he could not remember who he talked to on November 22d."

"By the Court: How many people did you talk to on November 22d?"

"Mr. Francis: I could go back and reconstruct it."

"By the Court: No, he isn't going to go back."

3. During defense counsel's closing argument to the jury:

"Now you gentlemen will recall that I asked Officer Cannon how many times he had talked to me on the telephone yesterday and he said that he had talked to me on the telephone yesterday 3 times. I submit to you gentlemen that I did not talk to Officer Cannon at any time on the telephone yesterday."

"Mr. Fleming: Mr. Francis is testifying, he is not under oath."

"By the Court: You cannot testify about that at all, so what the officer has said is uncontradicted in the record."

All of the discourse from the bench quoted above was unnecessary. In the announcement of rulings during the course of a trial, while the issues still hang in the balance, it is not proper for a judge to let his own attitudes and observations leak into the crucible. If he wishes to expedite the questioning of a witness he can do so in a way that does not appear to demean the attorney's efforts. If he is disposed to carry a discussion with counsel

beyond that point he should do so out of the jury's hearing. We can understand the impatience of any trial court with trivia and undue persistence of counsel in the pursuit of matter beyond the saturation point. But he must not let it show, either in his countenance, tone of voice or remarks in the presence of the jury. He represents the majesty and impersonality of the law, which has no displeasure, no contempt for any man on trial, or for the counsel who pleads his case. To call a lawyer's argument silly in front of the jury certainly is beyond the pale.

The judgment is reversed with directions for a new trial.