**Delbert BURTON and Everett Ray Durham, Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 27, 1969.

Thomas D. Shumate, Shumate & Shumate & Flaherty, Richmond, for appellant.

John B. Breckinridge, Atty. Gen., John B. Browning, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Appellants, Delbert Burton and Everett Ray Durham, appeal from a judgment of the Rockcastle Circuit Court sentencing them to two years in the penitentiary pursuant to a jury verdict finding them guilty of breaking into the dwelling house of one Eugene Thomas with intent to steal. KRS 433.180. Their sole contention is that the evidence was insufficient to support a conviction.

The residence of Thomas was located on a private lane or road leading off the Scaffle Cane Road about six miles south of the city of Berea. A neighbor, Bern Potter, lived on the same private lane between Thomas and the Scaffle Cane Road. On the evening of December 4, 1966, as Thomas and his wife arrived at home in

their automobile they encountered a red and white 1959 model Ford automobile with an Ohio license plate emerging from their yard. According to Thomas' estimate, it was then about 7:30 P.M., though both he and his wife and their neighbor Potter testified it was not yet dark, but only "dusky dark." The lights of the Ford were not burning, but were turned on as the two cars approached each other. Thomas stopped, whereupon the Ford pulled alongside him on the driver's side and also stopped. It was occupied by two men, whom Thomas later identified as the appellants. The driver of the Ford (according to Thomas, the appellant Durham) asked Thomas where some person lived, and told him they had been knocking on the door of the Thomas house seeking information in that respect. Thomas had never heard of the person for whom the intruders purported to be searching, so they drove on away. When the Thomases got out of their automobile and went to the house they discovered that it had been forcibly entered and ransacked and that a .22 pistol and a pair of cufflinks had been stolen. They repaired at once to Berea, picking up neighbor Potter as they went, and reported the incident to the police. Within a very short time thereafter, between 8:30 and 9:00 P.M., a city police officer observed the appellants traveling southward through Berea in a red and white 1959 model Ford with an Ohio license plate and arrested them. The car was searched, but none of the stolen articles was found.

Potter testified that he saw a red and white 1959 model Ford go past his house in the direction of the Thomas home at about dusk on the evening of December 4, 1966, and come back out 15 or 20 minutes later, Thomas himself having passed by in the interim. Both Thomas and Potter testified that they saw the two men in the Ford well enough to identify them, and they did identify them immediately after their arrest in Berea an hour or so later. Apparently, neither Thomas nor Potter was personally acquainted with the appellants,

though Potter said he had seen them before.

The appellants lived in Newport. They testified that they were doing some construction work on a house there and went to Berea for the purpose of securing some tools from Durham's father; that they left Newport at about 5:30 P.M., traveled southward on I-75 and stopped for supper at Pete's Restaurant two or three miles north of Berea; that they continued on to Berea after remaining 15 or 20 minutes at the restaurant and were stopped and arrested as they were driving southward in Berea; and that they readily consented to a search of the car, which produced nothing incriminating.

The distance between Newport and Berea as the crow flies is about 110 miles. By highway it is, of course, greater—sufficiently great that if the appellants actually left Newport at 5:30 P.M. it is very unlikely that they could have been in Rockcastle County by dusk or by 7:30 P.M. However, the only witnesses to corroborate their testimony in this respect were their wives. An employe of Pete's Restaurant testified that she saw them there between 8:00 and 8:30 P.M., but that is not inconsistent with their having been at the Thomas home, 10 miles away, at 7:30 P.M. or at dusk.

The attack on the sufficiency of the evidence to support the verdict is focused upon the identifications made by Thomas and Potter. It is contended that we should take judicial notice that on December 4 at 7:30 P.M. in eastern Kentucky it is "black dark," and that if it was black dark when the men in the Ford automobile were seen near the Thomas home neither Thomas nor Potter could have seen their faces well enough to identify them. However, in view of the testimony of both the Thomases and Potter that it was only "dusky dark," a concession that it was "black dark" at 7:30 P.M. would merely suggest that they were mistaken in their estimate of the hour. Moreover, on a pole above his house Thomas had "one of those

REA lights" that burn all night, and Potter had his porch light on, which, he said, illuminated the car as it passed his place.

 We recognize the distinct possibility of mistaken identity in a case of this kind. But after the able closing argument of appellants' counsel there can be no doubt that the twelve jurors who heard the case were fully aware of it also. The accuracy of an identification, though it is based on memory and the senses alone, still lies within the inherent province of the jury to assess. Cf. Merritt v. Commonwealth, Ky., 386 S.W.2d 727, 729 (1965). In the circumstances of this case we cannot hold the identifications given by Thomas and Potter, and especially Thomas, to be incredible as a matter of law, and that is what we would have to do in order to hold the evidence insufficient to sustain the verdict.

The judgment is affirmed.

All concur.