Randy J. KENNEDY and Richard McGreal, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Sept. 17, 1976.

Rehearing Denied Jan. 14, 1977.

Jack Emory Farley, Public Defender, David E. Murrell, Deputy Public Defender, Frankfort, for appellants.

Ed W. Hancock, Atty. Gen., William W. Pollard, Asst. Atty. Gen., Frankfort, for appellee.

LUKOWSKY, Justice.

This is an appeal from a judgment of the McCracken Circuit Court which adjudged the appellants guilty of robbery in the first degree, KRS 515.020(1)(b),[1] and fixed their punishment at the minimum ten-year term of imprisonment. We affirm.

On the afternoon of January 31, 1975 two young men entered Pete Leasor's grocery in rural McCracken County and purchased some soft drinks and candy bars. They lingered in the store until Mrs. Leasor was alone. One of the young men approached Mrs. Leasor as she was opening the cash register, took a pistol from his pocket and held it on Mrs. Leasor while the other removed approximately $110.00 from the cash

---

1. "515.020 Robbery in the first degree.—
(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:
(b) Is armed with a deadly weapon . . ."

drawer. The young man who had taken the money from the cash drawer then produced a can of "mace" and sprayed it into Mrs. Leasor's face. The young men left the store, entered their automobile and fled the scene.

Mrs. Leasor rushed after the fleeing men and observed, with her chemically-blurred vision, that they drove away in a green Volkswagen with a white license plate. These facts were reported to the police without undue delay.

Shortly thereafter two local police officers observed the appellant, Kennedy, age 18 and the appellant, McGreal, age 22, pull into a gas station in a green Volkswagen with white license plates. At this time the officers had full knowledge of the facts of the Leasor robbery from a radio bulletin. They apprehended the appellants, placed them under arrest for the robbery and warned them of their "Miranda" rights.

Shortly thereafter the appellants gave written consent for the officers to search the Volkswagen and their home. This was followed by each of the appellants confessing in writing to the commission of the offense and giving statements detailing the circumstances and reasons for the crime.

These statements disclosed that the pistol used in the crime had been concealed at the gas station immediately prior to the arrest. When it was recovered, it was found to be unloaded and to have a broken firing pin. The search of the Volkswagen produced a can of "mace". The search of their home produced a coat resembling one worn by one of the robbers.

The appellants assign three errors:

I. An unloaded pistol with a broken firing pin is not capable of firing a shot and, consequently, does not constitute a deadly weapon, the use of which is necessary to support a conviction of robbery in the first degree in this case.

II. The can of "mace" and the coat were improperly admitted into evidence because the consent of the appellants was given after they were in custody and, consequently, could not have been voluntary.

III. The confessions of the appellants were improperly admitted into evidence because the trial court failed to hold an in chambers hearing to determine their voluntariness after counsel for the appellants objected to the introduction of the confessions on the grounds that they were contradictory and that he had not known of them prior to trial.

### I.

Prior to the adoption of the new penal code in 1974 it was clearly the law of this Commonwealth that any object could be a deadly weapon if it was intended by its user to convince a victim that it was deadly and if the victim was in fact convinced. *Merritt v. Commonwealth, Ky.*, 386 S.W.2d 727 (1965). The position of the appellants is that the penal code definition of a deadly weapon, KRS 500.080(4), includes only those firearms ". . . from which a shot, readily capable of producing death or other serious physical injury, may be discharged . . ." and that this statute supercedes and overrules *Merritt v. Commonwealth*, supra.

If there were no contrary indications of legislative intent the position of the appellants would be well taken. However, KRS 500.100 provides that the commentary accompanying the penal code may be used as an aid in construing the provisions of the code.

The following note appears in the statutes immediately preceding the code:

### "COMMENTARY (1974)

Explanatory background notes, designated COMMENTARY (1974), follow Kentucky Penal Code sections in this annotated edition. The notes were prepared AFTER enactment of the Penal Code (1974 H 232) and are NOT "Commentary accompanying this Code" as referred to in KRS 500.100.

These unofficial notes are based upon Commentary accompanying the November 1971 Final Draft of the Kentucky Penal Code . . . published by the

Kentucky Crime Commission and the Kentucky Legislative Research Commission. Appreciation is expressed to the Kentucky Department of Justice and the Legislative Research Commission for their assistance and cooperation in rewriting the original commentary to conform to the Penal Code as finally amended and enacted."

It is apparent that KRS 515.020(1)(b) traces its ancestry to the November 1971 final draft of the Kentucky Penal Code published by the Kentucky Crime Commission and Kentucky Legislative Research Commission, which was accompanied by a commentary. When we compare KRS 515.-020(1)(b) with § 1605(1)(b) of the proposed code we find that the language is identical.

The commentary to this section of the proposed code provided:

"Statutory Robbery Offenses: The most significant statutory robbery offense under existing law is entitled 'armed robbery' and defined by KRS 433.140. Its relationship to common law robbery is identical to the relationship of Section 1605 to Section 1606. Conviction is appropriate only upon a showing of common law robbery plus a factor of aggravation. *Only in terms of the factors which serve to aggravate robbery does KRS 433.140 significantly differ from Section 1605.* The aggravating factor provided by Subsection (1)(a) is an addition to existing law. *The ones that are provided by Subsection (1)(b) and (c) serve only to clarify existing principles.*

Despite the fact that the existing armed robbery statute does not distinguish between a 'deadly weapon' and a 'dangerous instrument,' this distinction has been made by the Court of Appeals. See *Napier v. Commonwealth,* 356 S.W.2d 755 (Ky.1962); *Murphy v. Commonwealth* [255 Ky. 676] 75 S.W.2d 341 (1934). It was put this way by the Court:

The established rule on the subject is that, where the weapon is of such character as to admit of but one conclusion in that respect, the question whether or not it is deadly . . . is one of law; but,

where the weapon employed is such that its deadly character depends upon the manner and circumstances of its use, the question is one of fact for the jury. *Owens v. Commonwealth* [187 Ky. 207] 218 S.W. 719, 720 (1920).

*This notion is used in Section 1605: If a robber is armed with a 'deadly weapon,' i. e., one having no usefulness other than as a weapon, he is a robber in the first degree; if he is armed with a 'dangerous instrument,' i. e., an object having legitimate uses, he is a robber in the first degree only if he uses or threatens to use the instrument. This distinction makes no substantive change in the existing law.*

In describing what constitutes a 'deadly weapon,' the Court of Appeals recently ruled that any object can be a deadly weapon if intended by its user to convince a victim that it is deadly and if the victim is in fact convinced. *Merritt v. Commonwealth,* 386 S.W.2d 727 (Ky. 1965). In that case, the defendant was convicted of armed robbery despite the fact that the 'weapon' he used may have been a toy pistol. *There is no intention to change this decision through the provisions of this chapter.*"

At the time the 1974 legislature enacted the penal code it had before it the commentary which explained the scope of this section. In the absence of the legislature having made any change in the language of the section we must conclusively presume that it assigned to it the meaning and effect attributed to the language by the 1971 commentary. *Merritt v. Commonwealth,* supra, is as viable now as it was prior to the adoption of the code.

II.

■ The consent to search forms executed by the appellants are not involuntary and, consequently, invalid solely because they were executed after the appellants had been taken into custody. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Bradley v. Commonwealth, Ky.,* 439 S.W.2d 61 (1969). This is particularly

true where, as here, the appellants received "Miranda" warnings prior to execution of the forms. *Gorman v. U. S.*, 380 F.2d 158 (1st Cir. 1967).

### III.

The failure of the trial court to hold an in chambers hearing to determine the voluntariness of the confessions as required by KRS 422.110(2) is not properly preserved for appellate review. The appellants raised no question before the trial court as to the voluntary nature of these statements. Their objections were limited to their inconsistency and the lack of knowledge on the part of counsel for the appellants of their existence. The appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court. *Jenkins v. Commonwealth, Ky.*, 413 S.W.2d 624 (1966); *Harris v. Commonwealth*, 301 Ky. 818, 193 S.W.2d 466 (1946).

The judgment is affirmed.

All concur.