**Leonard Paul LITTLE, Appellant,**

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

Supreme Court of Kentucky.

Feb. 18, 1977.

Rehearing Denied June 10, 1977.

Jack Emory Farley, Public Defender, Timothy T. Riddell, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., William W. Pollard, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

Leonard Paul Little was convicted on a charge of committing robbery in the first degree. The indictment charges that Little, while robbing the Redwine Shop on or about the 10th day of September, 1975, "was armed with a deadly weapon, towit: a shotgun," and that Little threatened, "the immediate use of physical force upon Hattie Redwine with the intent to accomplish the theft."

The trial court instructed the jury on robbery in the first degree and reasonable doubt. The jury found Leonard guilty of first degree robbery and fixed his punishment at confinement in the penitentiary for 20 years. The trial court imposed sentence in conformity with the jury's verdict. Leonard prosecutes this appeal.

The sole issue presented on appeal is whether the trial court erred by not instructing the jury to find whether the shotgun used during the robbery was a "deadly weapon." It is evident, as Leonard contends, the trial court ruled as a matter of law that the only instrument mentioned in

the evidence, which was a shotgun, was a deadly weapon. Leonard asserts also that this action of the trial court deprived him of his constitutional right to a trial by jury and a right to due process of law.

The evidence reveals that on the night before the robbery Stella Miller, Leonard's paramour, decided they would rob the Redwine Shop in Jackson, Kentucky. Stella testified that after she and Leonard arrived in Jackson, she went into the store to see if anyone was there other than Hattie Redwine. Stella further testified that after she determined that Hattie was alone she left the store and told Leonard. She also testified that Leonard put an orange hood over his head and went into the store with a sawed-off, double-barreled shotgun. Approximately 5 minutes later Leonard came out of the Redwine Store with a bag containing approximately $200.00. Two hours after the robbery Stella and Leonard took a bus to Indiana and stayed there about four days. They returned to Leonard's home in Noctor, a small town in Breathitt County.

Hattie Redwine testified that she was "going on 75 years of age" and that she had a pretty serious heart condition. She also testified that on the morning of September 10, 1975, Stella came into her store and asked to look at some watches. After informing Stella that she had no watches Hattie testified that Stella then left the store. Hattie went to the back of the store and began to open the safe. As she turned around a person who she identified as Leonard was holding a sawed-off, double-barreled shotgun on her. He demanded that she put all the money from the safe into a bag, and took her into the back room and locked the door. She protested. Her heart was giving her trouble. She requested that she be permitted to get heart medicine from her purse. Leonard refused. Hattie testified that Leonard took over $300.00 and some of her personal effects. The testimony of other witnesses bolstered that of Stella and Hattie.

The trial court instructed the jury as follows:

"INSTRUCTION NO. I

"You will find the defendant guilty under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following existed:

"A. That in this county and on or about the 10 day of September, 1975 and before the finding of the indictment herein he stole or took a sum of money from Hattie Redwine and the Redwine Shop, and

"B. That in the course of so doing and with intent to accomplish the theft he threatened the immediate use of physical force upon Hattie Redwine by pointing a shotgun at her,

"If you find the defendant guilty you will fix his punishment at confinement in the state penitentiary for not less than 10 nor more than 20 years.

"INSTRUCTION NO. II

"If you have a reasonable doubt of the defendant having been proven guilty you will find him not guilty."

The instruction given by the court followed verbatim Palmore, *Kentucky Instructions to Juries,* Sec. 4.21 at pages 159 and 160.

The offense of robbery in the first degree is defined in KRS 515.020:

"(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

(a) Causes physical injury to any person who is not a participant in the crime; or

(b) Is armed with a deadly weapon; or

(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

(2) Robbery in the first degree is a Class B felony."[1]

1. The authorized term of imprisonment for a Class B felony is not less than 10 years nor more than 20 years.

The argument of Leonard's counsel that the trial court should have submitted the question of whether or not a sawed-off, double-barreled shotgun is a deadly weapon stretches the bounds of credulity. It appears from counsel's argument that in order for Leonard to have had a fair trial it would have been incumbent upon the trial court to have each of the jurors fire the shotgun to see if it was operable. To argue, as counsel for Leonard did, that there was no evidence to show that Leonard was armed with "a weapon from which a shot readily capable of producing death or other physical injuries may have been discharged" is refuted by the evidence.

On that September morn, when Hattie Redwine looked into the muzzle of the shotgun she had every reason to believe that it was a deadly weapon. Leonard's demand for the money coupled with his action in pointing the gun at Hattie and receiving the money constitutes the offense with which he was charged, and which is succinctly described in KRS 515.020. Because the shotgun used by Leonard was named in the indictment it was unnecessary for the court to define the words "deadly weapon." Whether the instrument used in the course of a robbery is or is not a deadly weapon is a matter to be determined by the court as a matter of law. There was no evidence that any weapon other than a sawed-off, double-barreled shotgun was used in this robbery. As a matter of law such an instrument is a "deadly weapon" as defined in KRS 500.080(4). There was no occasion for an instruction permitting the jury to determine whether a weapon defined by the statute as a "deadly weapon" was or was not such a weapon. Palmore, *Kentucky Instructions to Juries*, Sec. 2.11, pages 56 and 57.

Leonard's counsel questions the correctness of this court's decision in *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (Decision rendered September 17, 1976). He contends that *Kennedy* represents an unconstitutional encroachment upon the power of the Legislature to specifically and definitively delineate the kinds of weapons which are "deadly" under the Penal Code. Be that as it may, this court's opinion in *Kennedy* is the law in this Commonwealth. The court is of the opinion that appellate counsel for Leonard misconstrues *Kennedy*. This court stated in *Merritt v. Commonwealth*, Ky., 386 S.W.2d 727 (1965):

"We hold that within the context of this statute (KRS 433.140) any object that is intended by its user to convince the victim that it is a pistol or other deadly weapon and *does so convince him* is one." (Emphasis added).

The effect of *Kennedy* is to construe the definition of "deadly weapon" under KRS 500.080(4) as including the words, "whether real or simulated," in accordance with *Merritt*. The Commentary to the Penal Code indicates that the decision in *Merritt* was not to be affected by the provisions of the chapter defining robbery in its different degrees. KRS 515.020.

This court is of the opinion that the judgment should be and it is affirmed.

All concur.