Shawn O. THACKER, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

No. 2003–SC–0430–MR.

Supreme Court of Kentucky.

June 15, 2006.

Euva D. May, Department of Public Advocacy, Frankfort, for Appellant.

Gregory D. Stumbo, Attorney General, Perry T. Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

GRAVES, Justice.

Appellant, Shawn Thacker, was sentenced to twenty years imprisonment in connection with his convictions by a Hardin Circuit jury of Robbery in the First Degree, Possession of a Firearm by a Convicted Felon, and Persistent Felony Offender in the First Degree. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

On September 10, 2001, Appellant entered the Exxon/Stuckey's Foodmart/Service Station near Interstate 65 in Elizabethtown, Kentucky. Appellant approached the sales counter with a sleeve of crackers. As the sales clerk, Nora Miller, began to process his purchase, Appellant stated, "while you have your drawer open, give me all the money." Miller replied, "Excuse me," and then looked down to see a gun on the counter. She saw that Appellant had rested the gun on its side using his hand to partially conceal it from public view. The gun was pointed toward the mid-section of Miller's body.

Miller emptied the cash register and Appellant left with the money. Miller saw Appellant and "a black person" drive away. Miller telephoned police and provided a description of the robber which was broadcast across local police radio. Within the next two hours, Appellant robbed a Shell Station in Bullitt County. The sales clerk in Bullitt County told police that two males, one white and one black, were driving an Oldsmobile with a recognized license plate number northward on interstate 65. The information from Bullitt County was also broadcast across local police radio. Shortly after the Bullitt County robbery, Appellant and a black male were apprehended driving north on interstate 65.

During Appellant's arrest, a revolver and miscellaneous cash were found in the vehicle. Appellant was transported to the Bullitt County Sheriff's Department where he confessed on videotape to the foregoing crimes. After the confession, officers brought Miller to the parking lot of the Sheriff's Department inside a police car with tinted windows. Appellant was brought out in handcuffs, where Miller identified him as the person who robbed her. She stated that she was certain because she recognized his t-shirt.

Appellant was subsequently charged and convicted by a jury of the crimes set forth above. Appellant now asserts five assignments of error upon which he requests relief. For the reasons set forth herein, we affirm.

I.

In his first assignment of error, Appellant alleges that his conviction for first degree robbery must be vacated because the jury did not convict him of each and every element of the crime pursuant to *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Those cases hold that criminal convictions must rest upon a jury determination that the defendant is guilty of each and every element of the crime with which he is charged. *Apprendi, supra,* at 477, 120 S.Ct. 2348; *Gaudin, supra,* at 510, 115 S.Ct. 2310. In *Apprendi, supra,* the United States Supreme Court held simply:

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348.

KRS 515.020 sets forth Robbery in the First Degree, in pertinent part, as follows:

A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he . . . [i]s armed **with a deadly weapon.**

(Emphasis added). The trial court in this case submitted the following instruction regarding First Degree Robbery[1] to the jury:

You will find the Defendant guilty of First–Degree Robbery under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about September 10, 2001, and before the finding of the indictment herein, he stole currency from Stuckey's in the Heartland Travel Plaza;

B. That in the course of so doing and with intent to accomplish the theft, he used or threatened the immediate use of physical force upon Nora Miller; AND

C. That when he did so, **he was armed with a 22–caliber revolver.**

(Emphasis added).

First–Degree Robbery is a Class B felony and carries a possible sentence between ten and twenty years imprisonment. By contrast, Second–Degree Robbery, which does not require a defendant to be armed with a deadly weapon, carries a possible sentence between five and ten years imprisonment.

KRS 500.080 lists the definitions for the term "deadly weapon," including "any weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged." Appellant claims that the question of whether or not an object is a "deadly weapon" is an essential element that must be submitted to the jury. Appellant asks this Court to overturn *Hicks v. Commonwealth,* 550 S.W.2d 480 (Ky.1977). In *Hicks,* this Court held, "[i]t should never be necessary in the instructions to define the word 'deadly weapon.' Whether the particular instrument is or is not a deadly weapon should be determined by the court as a matter of law."

■ It is clear that one of the essential elements of Appellant's first degree robbery charge is being armed with a deadly weapon. This element consists of two questions: (1) whether the defendant was armed with the object in question, and (2) whether that object is a deadly weapon. The first inquiry involves a pure question of fact. The second inquiry, whether an object is a deadly weapon, requires an application of the law to fact. Pursuant to *Hicks,* the jury in this case was only permitted to decide the purely factual question, while the trial judge decided the second inquiry, which involved the application of law to facts. Appellant argues that withholding the legal determination from the jury is error. For the reasons set forth below, we agree.

■ The United States Supreme Court has rejected the idea that a jury is only required to decide the factual components of essential elements. *Gaudin, supra,* at 511–515, 115 S.Ct. 2310. In *Gaudin,* the

---

1. The instruction was in exact accordance with the wording recommended in *1 Cooper,* Kentucky instructions to Juries (Criminal) § 6.14 (4th ed. Anderson 1993).

Supreme Court held that the jury should have been entitled to decide the entire essential element, including the application of law to fact. To avoid conflict with United States Supreme Court precedent in *Gaudin* and *Apprendi*, we are compelled to overrule *Hicks*. In doing so, we reiterate that the "judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions." *Gaudin, supra,* at 513, 115 S.Ct. 2310 (citing *Sparf v. United States,* 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895)). Thus, a proper jury instruction may have read:

> C. That when he did so, **he was armed with a deadly weapon, to wit: a 22–caliber revolver.**
>
> **D. As a matter of law, a deadly weapon is defined to include any weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged.**

Although the change may seem minor, this instruction ensures that the jury ultimately determines the essential elements of the offense, and acts in accordance with the law. Courts in other jurisdictions have taken a similar approach to instructing their juries on robbery. *See e.g., People v. Runnion,* 30 Cal.App.4th 852, 856, 36 Cal. Rptr.2d 203 (Cal.Ct.App.1994) (the trial court properly instructed the jury that the legal definition of a firearm includes a handgun, and left to the jury's determination the question of whether the weapon in the case was a handgun); *State v. Davis,* 349 N.C. 1, 506 S.E.2d 455, 481 (1998) (holding similarly); *Strickler v. Murray,* 249 Va. 120, 452 S.E.2d 648, 650 (1995) (an example of a Virginia jury instruction on robbery).

■■■■ The Commonwealth argues that even if the instruction was erroneous, it was harmless error. RCr 9.24 requires us to disregard any error or defect in the proceeding that does not affect the substantial rights of the parties. The test for harmless error is whether there is any substantial possibility that the outcome of the case would have been different without the presence of that error. *Commonwealth v. McIntosh,* 646 S.W.2d 43, 45 (Ky.1983). The United States Supreme Court has held that an erroneous jury instruction that omits an essential element of the offense is subject to harmless-error analysis. *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). We do not believe that the outcome of the case would have been different had the jury been properly instructed, as there is little doubt that the jury would have found a 22–caliber revolver to be a deadly weapon.[2] The error was harmless.

---

2. Even though Appellant does not put forth this argument in his brief, we note that the gun in this case was a deadly weapon regardless of its operability. For purposes of first degree robbery, the gun's operability is immaterial to the question of whether it is a deadly weapon. *Helpenstine v. Commonwealth,* 566 S.W.2d 415, 416 (Ky.1978) ("Whether the handgun was operable is not relevant."). As defined within the comments to KRS 515.020, an object is a deadly weapon if it is intended by the user to convince the victim that it is as such. *Merritt v. Commonwealth,* 386 S.W.2d 727, 729 (Ky.1965) (any kind of pistol, including a toy, falls within the first degree robbery statute); *Kennedy v. Commonwealth,* 544 S.W.2d 219, 220–221 (Ky.1976) (extending the holding in *Merritt* to the modern robbery statute); *see also, Shegog v. Commonwealth,* 142 S.W.3d 101, 109 (Ky.2004) (evidence sufficient to support conviction of first degree robbery where defendant merely referenced the fact that he had a gun, but never displayed or showed it to the victims).

The dissent's contention that the legislature's long standing interpretation of this phrase should be changed by judicial fiat lacks authority or substance. First, since operability of the deadly weapon is not an element of first degree robbery, *Apprendi* and its progeny are simply not implicated in this instance. *Id.* at 477, 120 S.Ct. at 2356 (a defen-

## II.

Next, Appellant argues that the Commonwealth failed to present sufficient evidence to sustain a conviction for possession of a firearm by a convicted felon. Appellant argues that the revolver in this case was missing a pin which is designed to hold the cylinder, and raises doubts as to the gun's operability due to this missing pin. As such, Appellant claims that the revolver was not a "firearm" under KRS 527.040. KRS 527.010(4) sets forth the definition of "firearm" as "any weapon which will expel a projectile by the action of an explosion."

■ We do not believe that this issue was properly preserved for review, as Appellant's motion for directed verdict did not specify this ground as a basis for relief. CR 50.01; *see also Potts v. Commonwealth,* 172 S.W.3d 345, 347–48 (Ky.2005) (a mere motion for directed verdict without stating the specific ground for relief is inadequate to preserve the issue on review). Nevertheless, we believe that there was sufficient evidence to support Appellant's conviction. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). At trial, Kenny Russell of the Bullitt County Sheriff's Department testified that the gun could fire, despite the missing cylinder pin. The jury was free to believe Mr. Russell's testimony, and it was not clearly unreasonable for them to do so. Appellant was not entitled to a directed verdict of acquittal.

## III.

Appellant claims that the trial court erred by allowing the Commonwealth to use two concurrent probated sentences as two separate convictions for PFO purposes. Appellant's prior convictions which formed the basis for his PFO conviction are: (1) burglary in the second degree and receiving stolen property over $300, and (2) trafficking in stolen vehicle parts. The first two crimes occurred on November 13, 1998, and Appellant received a probated five year sentence on each count to run concurrently. The second crime occurred on June 9, 1999, and Appellant received a two year sentence, probated for five years. Appellant's probation on his first conviction was not revoked, despite his reoffense in 1999. As such, Appellant claims that KRS 532.080(4) treats all the convictions as one conviction because he effectively served "concurrent or uninterrupted consecutive terms" for all three offenses. We disagree.

■ In *Commonwealth v. Hinton,* 678 S.W.2d 388 (Ky.1984), the defendant was convicted of three previous felonies in the same manner as Appellant. The defendant's first two felonies were probated sentences which ran concurrently. While on probation, the defendant committed a third felony offense. The Court held that the sentence from the third conviction did not merge into the sentence for the first two convictions, despite the fact that these sen-

dant is entitled to "a jury determination that [he] is guilty of every *element* of the crime with which he is charged") (emphasis added). Second, it is a perceptual distortion to categorize those deadly weapons which are deemed, after the fact, "inoperable" as "dangerous instruments." The gun in this case was clearly intended to convince the victim that it was readily capable of discharging a shot. Thus, to indicate that Appellant was entitled to an instruction for anything other than first degree robbery by means of being armed with a deadly weapon would undermine the policy, intent, and purpose of KRS 515.020.

tences were served as uninterrupted consecutive terms. Appellant argues that his situation may be distinguished from *Hinton* because his probation was not revoked at the time he was sentenced for the third conviction. We do not find this distinction to be of any consequence. Appellant began serving his sentence on the first two convictions before being charged and sentenced on the third conviction, and for this reason, the third conviction does not merge with the previous sentence, regardless of whether or not his probation was revoked.

## IV.

Appellant alleges that the trial court abused its discretion by allowing the victims of crimes committed in Bullitt County to testify at the sentencing hearing. Appellant's argument is without merit, and he cites to no authority as support.

## V.

 Lastly, Appellant claims that the trial court erred by refusing to suppress the victim's "show-up" identification of him. Without evaluating whether or not there was an error in this regard, we will simply state that any error in this regard would certainly be harmless because Appellant confessed to the robbery.

Accordingly, the judgment and sentence of the Hardin Circuit Court are affirmed.

LAMBERT, C.J., GRAVES, ROACH, SCOTT, and WINTERSHEIMER, J.J., concur.

COOPER, J., dissents in a separate opinion in which JOHNSTONE, J., joins.

COOPER, Justice, dissenting.

Since . . . there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of *Chapman* review is simply absent. There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object,* so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough.

*Sullivan v. Louisiana,* 508 U.S. 275, 280, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993). As in *Sullivan,* Appellant was denied the right to a trial by jury on the offense of robbery in the first degree.

Conviction of robbery in the *second* degree ("robbery 2nd"), a Class C felony, requires a jury to find beyond a reasonable doubt that in the course of committing theft, the defendant used or threatened the immediate use of physical force upon another person with intent to accomplish the theft. KRS 515.030. Robbery in the *first* degree ("robbery 1st"), a Class B felony, requires the jury to find those identical elements and additionally to find beyond a reasonable doubt one of three aggravating factors, *i.e.,* that the defendant (a) caused physical injury to any person who is not a participant in the crime; (b) was armed with a deadly weapon; or (c) used or threatened to use a dangerous instrument upon any person who is not a participant in the crime. KRS 515.020(1).

Appellant did not use physical force upon the victim, and the victim was not physically injured. KRS 500.080 contains the following definitions pertinent to this case:

(3) "Dangerous instrument" means any instrument, . . . article, or substance

which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious physical injury;

(4) "Deadly weapon" means any of the following:

. . .

(b) Any weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged . . . .

Appellant was convicted of robbery 1st under an instruction that read as follows:

### INSTRUCTION NO. 5

#### FIRST–DEGREE ROBBERY

You will find the Defendant guilty of First–Degree Robbery under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about September 20, 2001, and before the finding of the Indictment herein, he stole currency from Stuckey's in the Heartland Travel Plaza;

B. That in the course of so doing and with intent to accomplish the theft, he used or threatened the immediate use of physical force upon Nora Miller;

AND

C. That when he did so, he was armed with a .22–caliber revolver.

As held by the majority opinion, the trial court erred in deciding as a matter of law that the .22 caliber revolver was, in fact, a deadly weapon. *Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004) ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defen-*

*dant.*"); *Ring v. Arizona,* 536 U.S. 584, 609, 122 S.Ct. 2428, 2443, 153 L.Ed.2d 556 (2002) (Because "aggravating factors operate as the functional equivalent of an element of a greater offense, the Sixth Amendment requires that they be found by a jury.") (citation and quotation omitted); *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Further, "the characterization of a fact or circumstance as an 'element' or as a 'sentencing factor' is not determinative of the question 'who decides,' judge or jury." *Ring,* 536 U.S. at 604–05, 122 S.Ct. at 2441 (citing *Apprendi,* 530 U.S. at 492, 120 S.Ct. at 2363–64). Thus, I agree that *Hicks v. Commonwealth,* 550 S.W.2d 480 (Ky.1977), must be overruled (as must *Commonwealth v. Potts,* 884 S.W.2d 654, 656 (Ky.1994); *Helpenstine v. Commonwealth,* 566 S.W.2d 415, 417 (Ky.1978); *Little v. Commonwealth,* 550 S.W.2d 492, 494 (Ky.1977); and *Commonwealth v. Hammond,* 633 S.W.2d 73, 75 (Ky.App.1982)).

I also agree that the error would have been harmless if the evidence had been "overwhelming" that the .22 caliber revolver was a "weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged." KRS 500.080(4). *See Neder v. United States,* 527 U.S. 1, 16, 119 S.Ct. 1827, 1837, 144 L.Ed.2d 35 (1999) (error in failing to instruct jury that it must find beyond a reasonable doubt that misstatements in tax return and in affidavit filed in support of loan application were "material" deemed harmless error because evidence of materiality was overwhelming). Here, the revolver was defective because the pin

that holds the revolving cylinder in place was missing. Thus, when the weapon is held upright in its natural firing position, the cylinder would fall out, making firing impossible. A Bullitt County deputy sheriff testified that despite the missing cylinder pin, the gun *could* fire. However, he admitted that he did not test-fire the gun to see if it *would* do so. Under this evidence, the jury could well have believed that the .22 revolver was not a "weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged," thus was not a deadly weapon.

Although *Kennedy v. Commonwealth*, 544 S.W.2d 219, 220–21 (Ky.1976), did purport to carry forward into the penal code the common law notion that "an object is a deadly weapon if it is intended by the user to convince the victim that it is such," *Blakely, Ring*, and *Apprendi* would now require a jury instruction on that theory. In fact, that theory was never discussed at the trial level. I believe that the scenarios in *Kennedy* and in the case *sub judice* more properly fall within the third aggravating factor in KRS 515.020(1)(c), *i.e.*, "use[d] *or threaten[ed] the immediate use* of a *dangerous instrument* upon any person who is not a participant in the crime." (Emphasis added.) A gun that is not a "deadly weapon" because it is not one "from which a shot, readily capable of producing death or other serious physical injury, may be discharged" could still be a "[d]angerous instrument ... which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious physical injury." KRS 500.080(3). In fact, Appellant did not threaten to shoot Miller; he only laid the .22 revolver on the counter, which Miller took to be a threat since Appellant was also demanding money. In fact, Appellant could have used the gun to bludgeon Miller, and it would have

been proper to instruct the jury under that theory.

Finally, Appellant is entitled to a new trial because of the trial court's failure to instruct the jury on robbery 2nd as a lesser included offense in the event the jury failed to find beyond a reasonable doubt that the defective .22 caliber revolver was a deadly weapon. It is the duty of the trial court in a criminal case to instruct the jury on the whole law of the case, RCr 9.54(1), and this rule requires instructions applicable to every state of the case deducible from or supported to any extent by the testimony. *Webb v. Commonwealth*, 904 S.W.2d 226, 228 (Ky.1995); *Reed v. Commonwealth*, 738 S.W.2d 818, 822 (Ky. 1987). A defendant has the right to have every issue of fact raised by the evidence and material to the defense submitted to the jury on proper instructions. *Hayes v. Commonwealth*, 870 S.W.2d 786, 788 (Ky. 1993). He is entitled to an instruction on any lawful defense that he has, *Slaven v. Commonwealth*, 962 S.W.2d 845, 856 (Ky. 1997), including the defense that he is guilty of a lesser included offense of the crime charged. "Although a lesser included offense is not a defense within the technical meaning of those terms as used in the penal code, it is, in fact and principle, a defense against the higher charge." *Id.; see also Brown v. Commonwealth*, 555 S.W.2d 252, 256 (Ky.1977). An instruction on a lesser included offense is required if the evidence would permit the jury to rationally find the defendant not guilty of the primary offense, but guilty of the lesser offense. *Commonwealth v. Wolford*, 4 S.W.3d 534, 539 (Ky.1999) (citing *Smith v. Commonwealth*, 737 S.W.2d 683, 688 (Ky. 1987)).

Failure to instruct the jury on a lawful defense is not harmless error. *Mondie v. Commonwealth*, 158 S.W.3d 203, 209–210 (Ky.2005) (failure to instruct jury on de-

fense of protection against burglary required reversal); *Nichols v. Commonwealth,* 142 S.W.3d 683, 690 (Ky.2004) (failure to instruct on voluntary intoxication as defense to intentional assault was prejudicial because it deprived defendant of lesser included offenses of wanton or reckless assault in the fourth degree); *Edwards v. Commonwealth,* 429 S.W.2d 859, 860 (Ky.1968) ("The court did not affirmatively instruct the jury so as to encompass this theory of defense. The failure to so instruct was error .... In the circumstances shown in this case the defendant was entitled to an affirmative instruction within the rationale of the authorities cited, and we must reverse the judgment of conviction for the failure of the court to so instruct the jury."); *Evitts v. Commonwealth,* 257 Ky. 586, 78 S.W.2d 798, 799–800 (1935) ("We have held repeatedly that, where an accused admits the offense, or essential elements of the offense, but relies upon facts or circumstances amounting to an avoidance of the crime, he is entitled to a concrete instruction upon his theory of the case, and a mere general instruction is not sufficient.... We are of the opinion that the failure of the court to give a concrete instruction on the defendant's theory of this case was sufficiently prejudicial to require reversal."); *Sebastian v. Commonwealth,* 585 S.W.2d 440, 441 (Ky. App.1979) ("We conclude that Sebastian was at least entitled to an instruction on his defense of entrapment. Failure to give such an instruction constitutes reversible error.").

Accordingly, I dissent.

JOHNSTONE, J., joins.