**Jesse FEGLEY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2009–CA–001898–MR.

Court of Appeals of Kentucky.

April 1, 2011.

M. Brooke Buchanan, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Todd D. Ferguson, Assistant Attorney General, Frankfort, KY, for appellee.

Before DIXON and MOORE, Judges; ISAAC,[1] Senior Judge.

## OPINION

DIXON, Judge:

Appellant, Jesse Fegley, appeals from an order of the Jefferson Circuit Court denying his motion for postconviction relief pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42. For the reasons set forth herein, we reverse and remand the matter for a new sentencing hearing in accordance with this opinion.

In April 2004, Appellant was indicted by a Jefferson County Grand Jury on twelve counts of complicity to first-degree robbery along with his codefendant, Grant Marksberry.[2] Following a jury trial, Appellant was convicted of six counts of first-degree robbery and was sentenced to sixty years of imprisonment. Appellant's convictions and sentence were affirmed on direct appeal to the Kentucky Supreme Court. *Fegley v. Commonwealth,* 2008

---

1. Senior Judge Sheila Isaac sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Marksberry entered a guilty plea to twelve counts of second-degree robbery and received a twenty-year sentence. As part of the plea agreement, Marksberry testified against Appellant.

WL 466150 (Ky.2008) (2006–SC–000329–MR).

On May 28, 2008, Appellant filed an RCr 11.42 motion in the trial court raising numerous claims of ineffective assistance of counsel, including counsel's failure to object to (1) the trial court's ruling that a BB gun was a deadly weapon, and (2) improper testimony by a probation and parole officer. On August 22, 2008, the trial court denied Appellant's motion without an evidentiary hearing. This appeal ensued.

■ In an RCr 11.42 proceeding, the movant has the burden to establish convincingly that he was deprived of some substantial right that would justify the extraordinary relief afforded by the postconviction proceeding. *Dorton v. Commonwealth*, 433 S.W.2d 117, 118 (Ky.1968).

■ *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets forth the standards which measure ineffective assistance of counsel claims. In order to be ineffective, performance of counsel must fall below the objective standard of reasonableness and be so prejudicial as to deprive a defendant of a fair trial and a reasonable result. *Id.* "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992), *cert. denied*, 508 U.S. 975, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993). Thus, the critical issue is not whether counsel made errors, but whether counsel was so *"manifestly* ineffective that defeat was snatched from the hands of probable victory." *Id.*

■ In considering ineffective assistance, the reviewing court must focus on the totality of evidence before the trial court or jury, and assess the overall performance of counsel throughout the case in order to determine whether the alleged acts or omissions overcome the presumption that counsel rendered reasonable professional assistance. *Strickland; see also Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). A defendant is not guaranteed errorless counsel, or counsel judged ineffective by hindsight, but counsel likely to render reasonably effective assistance. *McQueen v. Commonwealth*, 949 S.W.2d 70 (Ky.1997), *cert. denied*, 521 U.S. 1130, 117 S.Ct. 2536, 138 L.Ed.2d 1035 (1997). The Supreme Court in *Strickland* noted that a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

■ As he did in the trial court, Appellant first argues that he was denied effective assistance when his trial counsel failed to object to the trial court's preemptive finding that a BB gun was a deadly weapon. Although Appellant concedes that the trial court's ruling was correct under the law that existed at the time of trial, he believes counsel should have nonetheless made an objection to the law so that the issue could have been reviewed on appeal. We disagree.

As the trial court noted, our Supreme Court on the direct appeal in this matter squarely addressed the issue, observing:

In *Thacker v. Commonwealth* [194 S.W.3d 287, 290–91 (Ky.2006) ], we held that the question of whether an object used in a robbery was a deadly weapon must be submitted to the jury. Fegley's trial, however, occurred before we issued our opinion in *Thacker*. So Fegley's counsel understandably did not make a *Thacker*-related objection to the instructions.

Before we issued our opinion in *Thacker*, we had held that the issue of whether an object is a deadly weapon was an issue for the trial court to decide as matter of law. [*Hicks v. Commonwealth*, 550 S.W.2d 480, 481 (Ky.1977)]. Although *Thacker* obviously overruled our earlier holding on this point, the controlling law at the time of Fegley's trial was that the question of whether an object was a deadly weapon was a matter for the court alone to determine.

*Fegley*, 2008 WL 466150 at *1. The Court further noted that, since the victims herein testified that they were convinced the BB gun was a deadly weapon, the jury would have inevitably found that it was such under the principle espoused in *Merritt v. Commonwealth*, 386 S.W.2d 727, 729 (Ky. 1965) ("[A]ny object that is intended by its user to convince the victim that it is a pistol or other deadly weapon and does [so] convince him *is* one.").[3]

Certainly, trial counsel could have made an argument for reversal of existing law at the time of trial. Supreme Court Rules (SCR) 3.130(3.1). However, as previously stated, "[a] defendant is not guaranteed errorless counsel, or counsel adjudged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *McQueen*, 949 S.W.2d at 71. We simply cannot conclude that counsel's failure to anticipate a change in the law equated to ineffective representation. *Sanborn v. Commonwealth*, 975 S.W.2d 905, 913 (Ky.1998), *cert. denied*, 526 U.S. 1025, 119 S.Ct. 1266, 143 L.Ed.2d 361 (1999), *overruled on other grounds in Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky.2009).

■ Appellant next argues that counsel was ineffective in failing to object to improper testimony offered by a probation and parole officer during the sentencing phase of trial. Specifically, the officer erroneously testified that Appellant's maximum possible sentence was 120 years of imprisonment, when in fact, under KRS 532.110(1)(c), it was only 70 years of imprisonment. The Commonwealth used the erroneous information in its closing argument by suggesting to the jury that they start in the middle between 10 and 120 years, and move up or down depending on the mitigating and aggravating circumstances. In so doing, the prosecutor concluded, "I'm going to ask you to give him a sentence that revolves around 60 years, plus or minus." Defense counsel failed to object to either the probation and parole officer's testimony or the Commonwealth's closing argument. The jury thereafter returned with a recommended sentence of 60 years.

In his direct appeal, Appellant urged our Supreme Court to review the issue for palpable error under RCr 10.26. However, the Court ruled that Appellant did not show "that the officer's erroneous testimony caused him to suffer such severe prejudice as to necessitate palpable error relief." *Fegley*, 2008 WL 466150 at *2. Appellant now argues to this Court that, had trial counsel objected to the testimony and/or closing argument, the jury would have likely reached a different sentencing verdict. We are compelled to agree.

In *Robinson v. Commonwealth*, 181 S.W.3d 30 (Ky.2005), the Kentucky Supreme Court addressed the issue of a probation and parole officer's incorrect testi-

---

3. Recently, in *Wilburn v. Commonwealth*, 312 S.W.3d 321, 327–28 (Ky.2010), the Kentucky Supreme Court overruled the decision in *Merritt*, holding that it is inapplicable to the stat- utes now in effect. Again, however, *Merritt* was the law at the time of Appellant's trial and direct appeal.

mony about good time credits as it related to the defendant's parole eligibility. In holding that such constituted palpable error, the Court noted:

> The use of incorrect, or false, testimony by the prosecution is a violation of due process when the testimony is material. *Napue v. Illinois,* 360 U.S. 264, 269, 272, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). This is true irrespective of the good faith or bad faith of the prosecutor. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963). When the prosecution knows or should have known that the testimony is false, the test for materiality is whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976).
>
> The question remains whether the testimony influenced the jury to render a sentence greater than what it might otherwise have given absent the incorrect testimony. We believe it did and, for sure, can't say it didn't. The Commonwealth relied, almost solely, on Franklin's testimony to persuade the jury to recommend the maximum sentence. The jury was given information to consider that was obviously confusing to the very people who deal with it on a daily basis. There is a reasonable likelihood that the jury was influenced by the incorrect testimony.

*Robinson,* 181 S.W.3d at 38.

Similarly, in *Lawson v. Commonwealth,* 85 S.W.3d 571, 580 (Ky.2002), a probation and parole officer's incorrect testimony resulted in "the jury believ[ing] it was considering a range of penalties between 'goalposts' of ten (10) years—the minimum possible sentence—and forty (40) years— the maximum penalty[,]" when, in fact, the maximum penalty was only twenty (20) years. As in the instant case, the prosecutor in *Lawson* relied upon the probation and parole officer's incorrect testimony in asking the jury to fix a mid-point sentence of twenty (20) years. In holding that the defendant was entitled to a new sentencing phase, the Court concluded:

> [B]ecause of the improper information given to the jury regarding the maximum sentence it could fix, no one will ever know what sentence the jury would have recommended if it had deliberated Appellant's punishment in reference to the proper maximum penalty "goalpost"- twenty (20) years. While we may reasonably assume that the jury would not have chosen the minimum penalty of ten (10) years by recommending the minimum sentence on each offense to be served concurrently (because the jury did have full knowledge of the minimum penalty), we have no basis to assume that the jury would necessarily have chosen the maximum penalty of twenty (20) years if it was in possession of full and complete information about the penalty range. The jury could easily have again selected the midpoint of the range—fifteen (15) years. Although we recognize that the trial court may again elect to sentence Appellant to a total sentence of twenty (20) years, we believe due process entitles Appellant to a jury recommendation as to whether the sentences for his convictions run concurrently or consecutively, and we also know that the jury's recommendation will be considered by the trial court before it makes a final decision.

*Id.* at 582.

We are of the opinion that both *Robinson* and *Lawson* dictate that Appellant is entitled to a new sentencing phase. Admittedly, we are somewhat perplexed that the Kentucky Supreme Court did not find that the error herein was palpable, as it

did in *Robinson.* Nevertheless, pursuant to *Martin v. Commonwealth,* 207 S.W.3d 1, 5 (Ky.2006),

> [w]hen an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process. However, on collateral attack, when claims of ineffective assistance of counsel are before the court, the inquiry is broader. In that circumstance, the inquiry is not only upon what happened, but why it happened, and whether it was a result of trial strategy, the negligence or indifference of counsel, or any other factor that would shed light upon the severity of the defect and why there was no objection at trial. Thus, a palpable error claim imposes a more stringent standard and a narrower focus than does an ineffective assistance claim. Therefore, as a matter of law, a failure to prevail on a palpable error claim does not obviate a proper ineffective assistance claim.

Moreover, we are of the opinion that the court's instructions to the jury in this regard are equally egregious. It would seem that a court's instruction that a jury may in fact sentence a defendant to a "confinement in the penitentiary" to a term of years which exceeds the mandates of KRS 532.110(1)(c), is no less false or incorrect than the testimony of the probation officer or the closing statements of the prosecuting attorney. As emphasized by the Supreme Court in *Peyton v. Commonwealth,* 253 S.W.3d 504, 511 (Ky.2008),

> What is at stake here is judicial transparency. The judiciary is duty-bound to maintain credibility with the jurors of this Commonwealth. As a matter of policy, the Commonwealth's courts should not instruct a jury that they have options in relegating a sentence for a criminal defendant, and then take these

options away. It is incumbent upon this Court to ensure that the People have confidence in their judiciary. Therefore, if we instruct the jury that they have the power to recommend a sentence with one hand, and then take that decision away from them with the other, we have failed in our task to uphold the mandates and ideals of our Constitution.

We conclude that defense counsel's performance, in failing to object to the probation and parole officer's erroneous testimony and/or the Commonwealth's closing argument, fell below the objective standard of reasonableness and was so prejudicial as to deprive Appellant of a reasonable result. *Strickland.* Accordingly, Appellant is entitled to a new sentencing phase.

The order of the Jefferson Circuit Court denying Appellant postconviction relief pursuant to RCr 11.42 is affirmed in part and reversed in part. This matter is remanded for further proceedings consistent with this opinion.

ALL CONCUR.