**Christopher Shiloh GAMBLE,**
**Appellant,**

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

**No. 2008–SC–000669–DG.**

Supreme Court of Kentucky.

Aug. 26, 2010.

265 S.W.3d 190, 194–95 (Ky.2008)) (alterations in original).

Linda Roberts Horsman, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCHRODER.

In this case, we are called upon to interpret KRS 515.020(1)(c), which aggravates second-degree robbery to first-degree robbery when the defendant "[u]ses or threatens the immediate use of a dangerous instrument. . . ." We conclude that the trial court did not err in denying a directed verdict motion on the charge of first-degree robbery under KRS 515.020(1)(c), where the defendant threatened the use of a gun in the course of a bank robbery.

On February 7, 2007, a man later identified as Appellant Christopher Gamble walked into the Alexandria Drive branch of Chase Bank in Lexington with his head and face covered. Natalie Lindgren, an assistant manager, was working behind the teller window, and her manager Lynn Dowdy was standing nearby. Lindgren felt threatened by the man, and immediately pressed her silent alarm. Gamble walked to Lindgren's window, passing her a bag and a note that read, "This is a robbery. I have a gun. Quietly empty your drawer fast." Gamble also told Lindgren, "I have a gun." [1] Lindgren testified that she believed Gamble had a gun, though she never saw one. Lindgren placed money, including "bait money," and a dye pack in the bag. As Gamble left, he told Lindgren, "You just saved your life." Gamble's hands remained in plain view the entire time, and, according to Lindgren, he never placed his hands in his pockets.

---

1. Lindgren and Dowdy offered slightly different testimony as to what Gamble said. Both testified, however, that Gamble said, "I have a gun."

Police quickly apprehended Gamble and obtained his aunt's consent to search her apartment, where Gamble had been living. They recovered Gamble's dye-stained clothes; $3,516 in cash; and the torn-up robbery note. The bait money was found in a trash can near the bank. No gun was ever recovered.

In Gamble's taped statement to police, he admitted to robbing the bank and passing the note to Lindgren. However, Gamble denied making any threatening statements, and he stated that he did not actually have a gun. Testifying in his own defense at trial, Gamble again denied being armed and denied making any statements other than what he wrote in the note.

Defense counsel moved for a directed verdict on the first-degree robbery charge, arguing there was no evidence Gamble was actually armed. The trial court denied the motion. The jury was instructed on first- and second-degree robbery, and returned a verdict finding Gamble guilty of first-degree robbery. The trial court imposed a sentence of 12 years' imprisonment, consistent with the jury's recommendation. The Court of Appeals affirmed Gamble's conviction, and this Court granted discretionary review.

■■■ The sole issue before this Court is whether the trial court erred in denying Gamble's motion for a directed verdict on the charge of first-degree robbery. The standards for the granting and review of a directed verdict motion are well-established.

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.[2]

KRS 515.020 (the first-degree robbery statute), incorporates all the elements of second-degree robbery,[3] but also requires one of three aggravating circumstances, which are listed in KRS 515.020(1)(a), (b), and (c):

(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

(a) Causes physical injury to any person who is not a participant in the crime; or

(b) Is armed with a deadly weapon; or

(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

---

**2.** *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991).

**3.** KRS 515.030 (the second-degree robbery statute) reads:

(1) A person is guilty of robbery in the second degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft. (2) Robbery in the second degree is a Class C felony.

(2) Robbery in the first degree is a Class B felony.

Gamble was indicted under KRS 515.020(1)(c) for threatening the immediate use of a dangerous instrument. This Court has rarely had occasion to discuss subsection (c). Therefore, much of our first-degree robbery caselaw, which primarily interprets subsection (b), has little applicability to this case.[4] Unlike subsection (b), which requires that the defendant be armed with a deadly weapon[5] at the time of the robbery, subsection (c) requires that a dangerous instrument be "actually used or threatened to be immediately used upon some person."[6]

The commentary to KRS 515.020 suggests that the definitions of "deadly weapon" and "dangerous instrument" were intended to be mutually exclusive.[7] However, shortly after the adoption of the current Penal Code, this Court held, "Though not every 'dangerous instrument' is a 'deadly weapon,' a 'deadly weapon' ordinarily is a 'dangerous instrument' as well."[8] This interpretation is supported by the plain wording of KRS 500.080(3), which defines a "dangerous instrument" as

any instrument, including parts of the human body when a serious physical injury is a direct result of the use of that part of the human body, article, or substance which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious physical injury. . . .

Turning to the instant case, drawing all fair and reasonable inferences in favor of the Commonwealth, Gamble entered Chase Bank, and handed Lindgren a note that said, "This is a robbery. I have a gun. Quietly empty your drawer fast." Gamble also verbally stated, "I have a gun" and told Lindgren after the robbery, "You just saved your life." Gamble specifically referenced a gun, threatened to use it, and implied that he would have used it had Lindgren not cooperated. Therefore, Gamble's statements amounted to threatening the immediate use of a gun.

Gamble later denied being armed, and denied saying "I have a gun." The evidence of Gamble's statements created a jury question as to whether Gamble was armed with a gun at the time of the robbery. Drawing all fair and reasonable inferences in favor of the Commonwealth, a reasonable juror could conclude that Gamble was armed. It is therefore reasonable to conclude that the gun was a dangerous instrument, i.e., readily capable of causing

**4.** See, e.g., Wilburn v. Commonwealth, 312 S.W.3d 321 (Ky.2010); Shegog v. Commonwealth, 142 S.W.3d 101 (Ky.2004); Dillingham v. Commonwealth, 995 S.W.2d 377 (Ky. 1999); Swain v. Commonwealth, 887 S.W.2d 346 (Ky.1994); Kennedy v. Commonwealth, 544 S.W.2d 219 (Ky.1976) (all interpreting KRS 515.020(1)(b)).

**5.** See KRS 500.080(4) (defining "deadly weapon").

**6.** KRS 515.020 cmt.

**7.** "In combination, the two provisions distinguish between two types of weapons, one having no apparent usefulness except as a weapon ['deadly weapon'], and the other having a legitimate purpose but still capable of dangerous use ['dangerous instrument']." Id. (brackets in original).

**8.** Whorton v. Commonwealth, 570 S.W.2d 627, 631 (Ky.1978), rev'd on other grounds, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979), overruled on other grounds by Polk v. Commonwealth, 679 S.W.2d 231 (Ky.1984). See also Wilburn, 312 S.W.3d at 329. ("[M]any items used in a robbery that do not meet the definition of 'deadly weapon' under KRS 500.080(4), as we interpret it herein, would easily qualify as a 'dangerous instrument' under KRS 500.080(3).").

death or serious physical injury under the circumstances in which it was threatened to be used.[9]

In support of his argument, Gamble cites *Williams v. Commonwealth.*[10] In *Williams*, the defendant robbed a convenience store, pointed to some sort of unidentified bulge in his pocket, and cautioned to the clerk, "Do you want your life?"[11] The clerk testified that he believed "maybe he ... had a weapon or something."[12] No gun was ever recovered. This Court held that "[w]ithout an instrument's ever being seen, an intimidating threat albeit coupled with a menacing gesture cannot suffice to meet the standard necessary for a first-degree robbery conviction."[13]

*Williams*, however, is distinguishable from this case. First, it is not clear under which subsection of the first-degree robbery statute Williams was indicted.[14] More importantly, unlike Gamble, the defendant in *Williams* never specifically stated that he had a weapon or dangerous instrument of any sort. He simply pointed to a bulge in his pocket and asked, "Do you want your life?" By contrast, Gamble specifically stated that he had a gun, both in writing and verbally. This amounts to threatening the immediate use of a dangerous instrument. The defendant in *Williams*, by contrast, made only vague threats.

Under the evidence as a whole, it was not clearly unreasonable for a jury to find that Gamble threatened the immediate use of a dangerous instrument. Therefore, it was not clearly unreasonable for the jury to find Gamble guilty of first-degree robbery under KRS 515.020(1)(c). The trial court did not err in denying Gamble's motion for a directed verdict. For the foregoing reasons, the decision of the Court of Appeals is affirmed.

All sitting. All concur. ABRAMSON, J., concurs by separate opinion.

ABRAMSON, J., concurring:

I concur with the majority opinion but write separately to observe that *Swain v. Commonwealth*, 887 S.W.2d 346 (Ky.1994), cited in footnote 4, actually involved five separate robberies. The evidence at trial established that in one robbery Swain referred to a gun, which no one saw, and then demanded money. *Id.* at 348. In upholding the denial of a directed verdict on that first-degree robbery charge, the *Swain* court relied solely on *Merritt v. Commonwealth*, 386 S.W.2d 727 (Ky.1965), a case which was recently overruled in *Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky.2010). Today, we clarify that the same result follows from the plain language of KRS 515.020(1)(c).

---

9. KRS 500.080(3).

10. 721 S.W.2d 710 (Ky.1986).

11. *Id.* at 711

12. *Id.*

13. *Id.* at 712.

14. The opinion refers to "first-degree (armed) robbery", *id.* at 711, and notes that "[t]he indictment specified that Mr. Williams committed the robbery while armed." *Id.* at 713. This suggests that Williams was indicted under KRS 515.020(1)(b). However, Williams also objected to a definition of "dangerous instrument" in the jury instructions, which suggests that he may have been indicted under KRS 515.020(1)(c) as well. *Id.* at 711.