**Kristy Rene LAWLESS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2009–SC–000032–MR.**

Supreme Court of Kentucky.

Aug. 26, 2010.

Daniel T. Goyette, Louisville Metro Public Defender, Elizabeth B. McMahon, Assistant Public Defender, Office of the Louisville Metro Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Office of Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Kristy Lawless appeals from a December 16, 2008 Judgment of the Jefferson Circuit Court convicting her, in accord with the jury's verdict, of robbery in the first degree, in violation of KRS 515.020. Pursuant to Lawless's plea acknowledging her status as a first-degree persistent felon, the court sentenced Lawless to twenty-years imprisonment. Lawless was accused and found guilty of robbing a National City Bank at 4th and Oak Streets in Louisville. She complains on appeal that the instructions given the jury were flawed in several ways: (1) that they included a first-degree robbery charge not supported by the evidence; (2) that they included an unsupported theory of first-degree robbery and thus violated her right to a unanimous verdict; (3) and (4) that they failed to include instructions on the lesser included offense of theft by unlawful taking and the affirmative defense of duress. Because we agree with Lawless that the evidence did not support the charge of first-degree robbery, we reverse her conviction and remand for additional proceedings. We shall address other issues only to the extent that they could recur at a retrial.

### RELEVANT FACTS

The Commonwealth's proof included testimony by the bank teller whom Lawless confronted and by a customer at an adjacent teller station who witnessed that confrontation. Both witnesses testified that Lawless approached the teller with the hood of her black jacket over her head and across part of her face. They both testified that she kept her right hand in the jacket pocket and with her left hand passed a note to the teller. The note demanded that the teller "hand over all the money, fast and quiet with no dye packs." The teller testified that when she was not sure how to hand over the money, Lawless ordered her to "put it in a bag." The teller then put the money into the plastic bag lining her wastebasket and gave it to Lawless. The adjacent customer testified that when he saw the teller putting money into the wastebasket-liner he realized that she was being robbed.

When Lawless left the bank, the customer followed in hopes of learning her license

number. Lawless did not get into a car, however, but began walking away from the bank along 4th Street. The customer followed, reported to 911 what had happened, and continued to advise the 911 operator where Lawless was. Police arrived in just a few minutes and, following the customer's directions, apprehended Lawless just a couple of blocks from the bank as she emerged from behind a house. Behind the house an officer found the money—the exact amount the bank reported missing—and the plastic bag. The police did not find a gun, however, or any other weapon, nor was Lawless armed when she was taken into custody.

Both the teller and the customer testified at trial that the fact that Lawless kept her right hand in her pocket made them think that she might have a gun. Indeed, the teller testified that that possibility terrified her and made her try to do nothing that would upset Lawless and the customer testified that not only did Lawless keep her hand in her pocket but that she made gestures as though she had a gun. Because he thought she might have a gun, he decided against trying to intervene and instead followed her as she left. Neither the teller not the customer, however, saw a gun, any part of gun, or any other implement for that matter. They saw only that Lawless kept her hand in her pocket.

Lawless admitted having robbed the bank, but testified that she did so because an acquaintance of hers threatened to shoot her if she did not. She testified that she and the acquaintance, a man she had seen from time to time for about eight years but knew only as "Slim," had had a liaison the night before at Slim's apartment in the Park Hill housing project. In the morning, Lawless testified, Slim revealed a handgun, and asked her if she would do anything for him. Later, as Slim was driving her, Lawless believed, to her

home, he again pulled out the gun, pointed it at her, and told her she was going to rob a bank for him. He dictated the note, she testified, and told her exactly what she was to do inside the bank. As he dropped her off at the bank, he said that he would meet her a couple of blocks away. Slim was not at the rendezvous point, however, nor were the police able to find anyone at the Park Hill apartments who knew "Slim" or who answered to Lawless's description of him.

At the close of the Commonwealth's proof and again after her proof, Lawless moved for a directed verdict on the first-degree robbery charge. She also objected to the first-degree robbery instruction as not supported by the evidence. We begin our analysis with her challenge to the first-degree robbery instruction.

### *ANALYSIS*

### I. The Proof Did Not Justify an Instruction on First–Degree Robbery.

■ Kentucky Revised Statute (KRS) 515.030 provides that "[a] person is guilty of robbery in the second degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft." Second-degree robbery is a Class C felony punishable by imprisonment for five to ten years. The offense becomes first-degree robbery, a Class B felony, if, in the course of the theft by force, the person "(a) Causes physical injury to any person who is not a participant in the crime; or (b) Is armed with a deadly weapon; or (c) Uses or threatens the immediate use of a deadly instrument upon any person who is not a participant in the crime." KRS 515.020. No one was injured in Lawless's robbery, but the trial court ruled that Lawless could be found guilty of first-degree robbery if the jury believed either that she was armed with a deadly weapon or that she threatened the

immediate use of a dangerous instrument upon a non-participant. Over Lawless's objection, both of those theories were presented to the jury in the instructions the court gave them. *See Commonwealth v. Jones,* 283 S.W.3d 665 (Ky.2009) (claim that evidence is insufficient with respect to some but not to all charges is preserved by objection to an instruction on the unsupported charge, and appellate relief is required if evidence does not permit a reasonable finding of guilt on that charge.). Lawless maintains that neither finding is justified by the mere fact that she kept her hand in her pocket and pretended to have a gun. We agree.

As Lawless correctly points out, in *Swain v. Commonwealth,* 887 S.W.2d 346 (Ky.1994), also a bank robbery case, we explained that "a 'mere pocket bulge' was insufficient to create a jury issue as to the existence of a deadly weapon or dangerous instrument.... [W]ithout the instrument being seen, an intimidating threat, albeit coupled with a menacing gesture, cannot suffice to meet the standard necessary for a first degree robbery conviction." 887 S.W.2d at 347 (*citing Williams v. Commonwealth,* 721 S.W.2d 710 (Ky.1987)). Accordingly, we held that where the evidence established only menacing gestures, and a weapon was neither seen nor mentioned, the trial court erred when it refused to dismiss first-degree robbery charges.

Notably, *Swain* actually involved five different robberies which, in their variations, illustrate the scenarios typically encountered in cases charged under KRS 515.020(b) and(c), where no physical injury occurs. In one incident, Swain had a gun in his possession and brandished it in the course of the robbery. 887 S.W.2d at 348. Although this Court did not tie its analysis to a particular subsection of the statute, clearly Swain in that instance was both armed with a deadly weapon, KRS 515.020(b), and used or threatened the immediate use of a dangerous instrument, KRS 515.020(c). In a second incident, a gun was not seen by the victim but Swain referred to it and demanded money. That scenario fits squarely into KRS 515.020(c) as do the facts we address in *Gamble v. Commonwealth,* 319 S.W.3d 375 (Ky.2010). The last three offenses for which Swain was tried were similar to the case before us, *i.e.,* no gun was seen or referred to by the perpetrator but the victims perceived that he may have had a gun. Not surprisingly, this Court sustained Swain's first-degree robbery convictions for the first two incidents, but, as noted, held that he was entitled to a directed verdict on first-degree robbery charges as to the last three incidents.

Recently, in *Wilburn v. Commonwealth,* 312 S.W.3d 321 (Ky.2010), we explained that "[n]o amount of intent or intimidation by a robber can turn a toy gun, or a stick, or a finger in the pocket" into a deadly weapon that would satisfy KRS 515.020(b). In so holding, we overruled *Merritt v. Commonwealth,* 386 S.W.2d 727 (Ky.1965), a case in which our predecessor Court determined that any object meant to convince a victim that it is a gun or other deadly weapon and does so convince him *is* one. *Id.* at 327.[1] *Wilburn* clarified the requirement for a deadly weapon under KRS 515.020(b) as follows:

> [W]e construe KRS 500.080(4)(b)'s definition of "deadly weapon" as a reference generally to the class of weapons which

---

**1.** In *Swain,* we relied upon *Merritt* to hold that a verbal reference to an unseen weapon coupled with a demand for money was sufficient to sustain a case of first-degree robbery. This reference to a dangerous instrument-plus-demand scenario remains sufficient under KRS 515.020(c) (as illustrated by *Gamble v. Commonwealth, supra,*) even though *Merritt* was overruled in *Wilburn.*

may discharge a shot that is readily capable of producing death or serious physical injury. A .38 caliber revolver, operable or not, falls into that class of weapons. A toy gun or a water pistol does not. Therefore, Wilburn was armed with a deadly weapon within the meaning of 515.020(*l* )(b), and he was not entitled to a directed verdict upon the grounds that the Commonwealth failed to prove his firearm met the statutory definition of a deadly weapon.

Here there was testimony that Lawless kept her hand in her pocket and may have made gestures suggesting that she had a gun. No one saw a gun, however, a part of a gun, or any other deadly weapon as delineated in *Wilburn* and required by KRS 515.020(b). Moreover, Lawless never mentioned a gun or other weapon and thus did not "threaten the immediate use of a dangerous instrument", thereby rendering KRS 515.020(c) inapplicable.

In sum, as in the last three robberies addressed in *Swain*, these facts do not justify a first-degree robbery finding under either KRS 515.020(b) or (c) and the trial court erred, therefore, when it refused to direct a verdict on that charge. Because the evidence of first-degree robbery was insufficient, Lawless may not, under federal and state double-jeopardy principles, be retried for that offense. *Commonwealth v. Davidson*, 277 S.W.3d 232 (Ky.2009) (citing *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)). This ruling renders moot Lawless's contention that the first-degree robbery conviction violated her right to a unanimous verdict.

## II. The Trial Court Did Not Abuse Its Discretion by Refusing to Give Jury Instructions on Duress and Theft By Unlawful Taking.

Because Lawless's other contentions raise issues that could recur at a retrial, we shall consider them to that extent. Lawless contends that the trial court erred when it denied her requests for jury instructions on the defense of duress and on the lesser included offense of theft by unlawful taking. The trial court denied these requests because in its view the evidence did not permit findings either that Lawless had no viable alternative to the robbery or that she accomplished the theft without threatening the immediate use of physical force. We review under the abuse of discretion standard a trial court's decision not to give an instruction. *Crain v. Commonwealth*, 257 S.W.3d 924 (Ky.2008). There was no abuse of the trial court's discretion here.

As Lawless correctly notes, a trial court is required to instruct the jury on affirmative defenses and lesser-included offenses if the evidence would permit a juror reasonably to conclude that the defense exists or that the defendant was not guilty of the charged offense but was guilty of the lesser one. *Fredline v. Commonwealth*, 241 S.W.3d 793 (Ky.2007); *Fields v. Commonwealth*, 219 S.W.3d 742 (Ky.2007). It is equally well established that such an instruction is to be rejected if the evidence does not warrant it. *Payne v. Commonwealth*, 656 S.W.2d 719 (Ky.1983).

### A. Lawless Was Not Entitled to a Duress Instruction Because She Had a Reasonable Opportunity to Resist the Alleged Coercion.

Under KRS 501.090(1), it is a defense to any charge but intentional homicide, "that the defendant engaged in the proscribed conduct because he was coerced to do so by the use of, or a threat of the use of, unlawful physical force against him or another person which a person in his situation could not reasonably be expected

to resist." As noted above, Lawless testified that she robbed the bank because "Slim" threatened to shoot her if she did not. As the trial court correctly noted, however, under the statute this threat of force justifies Lawless's crime only if she could not reasonably be expected to resist it. Once Slim had dropped her off at the bank and she was no longer exposed to his threat, it is reasonable to have expected her not to follow through with the robbery, but to seek help from bank personnel or the police. Indeed, absent evidence that Slim posed such a far reaching threat that Lawless could not escape it with help, no rational juror could fail to find that Lawless had a reasonable alternative to the robbery. *Cf. United States v. Moreno,* 102 F.3d 994 (9th Cir.1996) (allegedly coerced drug courier had reasonable opportunity to resist notwithstanding threat by large gang). The trial court did not abuse its discretion, therefore, by refusing to give a duress instruction.

**B. Lawless Was Not Entitled to a Theft Instruction Because the Evidence Did Not Permit a Finding That She Did Not Threaten the Use of Force.**

■ Nor did the court abuse its discretion by refusing Lawless's request for an instruction on theft by unlawful taking as a lesser included offense of robbery. Second-degree robbery, as noted *infra*, requires a theft furthered by the use or threatened use of physical force. Theft by unlawful taking requires only "control over movable property of another with the intent to deprive him thereof." KRS 514.030(1)(a). Lawless contends that the jury could have concluded that she took control of the bank's property without threatening the use of force, that her hand-in-the-pocket demeanor was not threatening and that the teller surrendered the money not because she felt threatened but simply because that is what

she was trained to do. The trial court did not abuse its discretion by rejecting that argument and concluding that no rational juror could have believed that Lawless demanded the bank's money but doubted that her demand was accompanied by a threat of physical force. Her hand-in-the-pocket demeanor was clearly intended to further the theft by creating the impression that she was armed, and the teller testified that it had its intended effect. The teller was terrified, she stated, and did all she could so as not to upset the possibly armed Lawless. Lawless was not entitled to a theft by unlawful taking instruction, and will not be on remand if the evidence is substantially the same.

## CONCLUSION

■ In sum, although Lawless carried herself in a way and made gestures calculated to give the impression that she might be armed, a first-degree robbery finding requires something more. Because there was no evidence in this case satisfying either KRS 515.020(b) or (c), the charge of first-degree robbery should have been dismissed and her conviction of that offense must be reversed. Otherwise, Lawless's allegations of error are not sustainable. She was not entitled to an instruction on the defense of duress since the duress she testified to did not foreclose reasonable resistance. Nor was she entitled to an instruction on the lesser included offense of theft by unlawful taking, because no rational juror could have found that her demand for the bank's money was not accompanied by a threat of force. If the evidence is substantially the same at a retrial, these instructions, again, will not be required. Accordingly, we reverse the Judgment of the Jefferson Circuit Court and remand for additional proceedings consistent with this opinion.

CUNNINGHAM, NOBLE, SCHRODER, and VENTERS, JJ., concur. Minton, C.J.; and SCOTT, J., concur in result only.