Ronald BIRDSONG, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

No. 2009–SC–000084–DG.

Supreme Court of Kentucky.

April 21, 2011.

Rehearing Denied Sept. 22, 2011.

Linda Roberts Horsman, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Michael John Marsch, Jason Bradley Moore, Assistant Attorneys General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

## OPINION OF THE COURT

Ronald Birdsong received a twelve-year sentence following a jury conviction for Robbery, Second–Degree and Persistent

Felony Offender, First–Degree. This Court granted discretionary review to address whether a defendant's intimidating conduct, to wit: aggression against inanimate objects—without an explicit threat of bodily harm to a person—is sufficient force to constitute Robbery, Second–Degree. We find it is.

### Facts

On June 21, 2005, with a bandana over his nose and mouth, Ronald Birdsong ran into the Fifth Third Bank on Bryan Station Road in Lexington, Kentucky. He burst through the gate separating the teller area from the customer line. He moved the gate forcefully enough to create a loud bang when the gate hit the wall. And, the gate locked behind him.

Clustered at one employee's computer, four bank tellers were present. The tellers hid under the counter. Birdsong ordered them to "get up" and "give him the money." In doing so, he pulled a printer off the shelf under the counter near the tellers.

One teller arose and opened the drawers. Birdsong emptied the drawers. When the teller told him he had all of the money, Birdsong ran toward the exit. Unable to unlatch the gate leading to the customer area, he leapt over the gate and on to a nearby table, overturning a computer monitor in due course. Birdsong fled from the bank.

Following the theft, the police investigated. They released to the media a still photograph of the perpetrator from the bank's surveillance camera. Subsequently, they received a tip implicating Birdsong.

Birdsong was in police custody on unrelated charges. When detectives interviewed him, he confessed to taking the money from the bank.

Birdsong stood trial for Robbery, Second–Degree and Persistent Felony Offender, First–Degree.

At trial, two bank tellers testified. One teller testified Birdsong screamed at them to "get up," "give me the money," and "open the drawers." She said Birdsong was really loud. And, she complied with his orders because she was afraid of him based on his tone of voice. He screamed at her. However, she admitted Birdsong did not hit her or threaten to hit her. The second teller confirmed Birdsong did not make any explicit verbal threats against them or brandish a weapon.

Birdsong did not assert an innocence defense. Rather, he argued he did not use force or threaten the use of force during the crime; therefore, the jury could not find him guilty of Robbery, Second–Degree.

In response, the Commonwealth argued Birdsong's behavior constituted an implied threat to use force against a person and this was sufficient for a Robbery, Second–Degree conviction.

The trial court denied Birdsong's Motions for Directed Verdict.

The jury convicted Birdsong of Robbery, Second–Degree and Persistent Felony Offender, First–Degree. The jury recommended and the trial court imposed a twelve-year sentence.

Birdsong appealed his convictions to the Court of Appeals. There, he argued the jury could not convict him of Robbery, Second–Degree because the statute required he "use or threaten the use of physical force on another person." [1] The evidence demonstrated he injured no one and his physical aggression toward inanimate objects, to wit: bursting through the

1. KRS 515.030.

gate, pulling off the printer, and knocking over a computer monitor, were not a "threat to use physical force against another person." He argued the Commonwealth had failed to prove an essential element of the offense thus the trial court erred by denying him a directed verdict.

In response, the Commonwealth argued Birdsong's conduct provided a sufficient basis for the jury to infer Birdsong threatened the use of force on another person. The Court of Appeals agreed and affirmed Birdsong's convictions.

Making the same arguments he made in the lower courts, Birdsong sought review in this Court.

### Analysis

 Birdsong alleges the trial court erred by failing to direct a verdict on Robbery, Second–Degree. Under our law, the trial court must grant a directed verdict when, taking the evidence in the light most favorable to the Commonwealth, it would be clearly unreasonable for the jury to find guilt.[2] Moreover, the standard of review for this Court on appeal is "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is a defendant entitled to a directed verdict."[3]

KRS 515.030 defines Robbery, Second–Degree as:

A person is guilty of robbery in the second degree when, in the course of committing theft, he uses or *threatens the use of physical force on another person* with intent to accomplish the theft. (Emphasis added.)

As Birdsong correctly notes, the Commonwealth must prove the defendant's guilt beyond a reasonable doubt on every element of the offense.[4] Thus, the question for this Court is whether aggression toward inanimate objects in the presence of others during a theft sufficiently "threatens the use of physical force on another person." The answer to this question is a matter of statutory construction.

Birdsong argues the statute requires an explicit threat against a person. Since Birdsong made no explicit threats against the bank tellers, the tellers simply inferred based on Birdsong's conduct that he would hurt them if they did not comply with his demand for money. Birdsong's conduct and the tellers' inferences therefrom are not sufficient to constitute Robbery, Second–Degree.

The Commonwealth argues the threat of the immediate use of physical force was implicit from Birdsong's actions which is sufficient to satisfy the statute.

 When interpreting statutory language, certain fundamental principles of statutory construction guide us. First, this Court must give the statute's words their usual, ordinary, and everyday meaning.[5] Second, we "may not interpret a statute at variance with its stated language."[6] Thus, we turn now to the dictionary definition of "threaten."

The American Heritage Dictionary defines "threaten" as "1. To express a threat against. 2. To be a source of danger to; menace. 3. To portend. 4. To indicate danger or harm." *American Heritage Dictio-*

---

**2.** *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky.1991).

**3.** *Benham* at 187.

**4.** *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

**5.** *Thompson v. Bracken County*, 294 S.W.2d 943 (Ky.1956).

**6.** *Layne v. Newberg*, 841 S.W.2d 181, 183 (Ky. 1992).

*nary* 840 (3d ed.1992). Moreover, a "threat" is "1. An expression of an intention to inflict pain, injury, or evil. 2. One regarded as a possible danger." *Id.*

Based on these definitions and our review of the record, we cannot say it was clearly unreasonable for the jury to find Birdsong threatened the use of physical force on another person. Birdsong entered the bank wearing a bandana. He caused a loud noise when he entered the teller area by slamming the gate into the wall. He gave orders to the tellers in a loud voice. He pulled a printer onto the floor from a shelf near where the tellers hid under the counter. It was not unreasonable for the jury to conclude Birdsong expressed an intention to inflict pain or injury or that his behavior indicated danger or harm.

Moreover, it is clear from the tellers' testimony that they were afraid of Birdsong, that they "regarded [him] as a possible danger."

Whether the conduct at issue constitutes Robbery, Second–Degree is not readily answered by existing precedent. However, our prior precedent supports this interpretation.

In *Williams v. Commonwealth,* this Court recognized that the threat of physical force is the "gravamen" of Robbery, Second–Degree.[7] Williams robbed a convenience store by pointing to an unidentifiable bulge in his pocket while stating, "Do you want your life?" Williams stood trial for Robbery, First–Degree.

At trial, the store clerk testified he believed "maybe" Williams had a "weapon or something." The police did not recover a gun. This Court held "[w]ithout an instrument's ever being seen, an intimidating threat albeit coupled with a menacing gesture cannot suffice to meet the standard necessary for a first-degree robbery conviction."[8] The Court remanded Williams' case for retrial on a charge "no greater than robbery, second-degree."[9]

In *Lawless v. Commonwealth,* Ms. Lawless approached the bank teller with the hood of her jacket over her head and partially obscuring her face.[10] She kept her right hand in her pocket and handed the teller a note that read "hand over all the money, fast and quiet with no dye packs." Lawless told the teller to put the money in a bag. The teller used the garbage bag from the trash can under her counter. Based on Lawless keeping her hand in her pocket, the teller and another bank customer believed Lawless had a gun. Lawless walked out and away from the bank. Officers arrested Lawless quickly. They found the garbage bag and the money but no gun.

Lawless stood trial for Robbery, First–Degree. At trial, she argued no one was injured; she was not armed with a deadly weapon, and she did not use or threaten the use of a dangerous instrument. Therefore, her conduct was not Robbery, First–Degree. This Court agreed.

Relying on *Swain v. Commonwealth,* this Court reiterated that menacing gestures are insufficient to constitute Robbery, First–Degree.[11] "No amount of intent or intimidation by a robber can turn a toy gun, or a stick, or a finger in the pocket" into a deadly weapon that would

---

7. 721 S.W.2d 710 (Ky.1986).

8. *Williams v. Commonwealth,* 721 S.W.2d 710, 712 (Ky.1986).

9. *Id.*

10. 323 S.W.3d 676 (Ky.2010).

11. 887 S.W.2d 346 (Ky.1994).

satisfy KRS 515.020(b).[12] Because Lawless never mentioned a gun or other weapon, the trial court should have directed a verdict on Robbery, First–Degree.

Lawless also contended the trial court erred by failing to instruct the jury on Theft By Unlawful Taking as a lesser included offense of Robbery. This Court found the trial court did not err because no rational juror could have believed that Lawless's demand for money was not accompanied by a threat of physical force. Her "hand in the pocket" demeanor was clearly intended to further the theft by creating the impression she was armed. And, the teller testified Lawless's demeanor had its intended effect.

In this case, Birdsong demanded money and used aggression toward inanimate objects. The tellers believed Birdsong would harm them if they did not comply with his demand for money.

Based on the foregoing case law, we can conclude that Birdsong's conduct in this case was Robbery, Second–Degree.

Further, our conclusion in this matter is supported by case law from other jurisdictions.

The Federal Bank Robbery statute criminalizes taking money from a bank by force and violence or by intimidation.[13] "Intimidation" has been defined as "conduct and words ... calculated to create the impression that any resistance or defiance by the [teller] would be met by force."[14] The federal courts define what constitutes "intimidation" by examining whether the defendant's conduct and words created circumstances reasonably calculated to produce fear. The victim's reaction is relevant to the determination but not conclusive. However, the defendant's intent to cause fear is irrelevant. The focus is on whether the acts of the defendant can reasonably be expected to produce intimidation.

■ Generally, a defendant's invasion of the bank's teller area is sufficient to constitute intimidation.

In *United States v. Woodrup*, the defendant entered the bank, lunged at the teller and vaulted over the teller counter.[15] Then, he put the money from the teller drawers in his jacket and left the bank. He did not present a note, brandish a weapon, or make an oral demand for money. The Fourth Circuit asked whether an ordinary person in the teller's position would reasonably infer a threat of bodily harm from Woodrup's conduct. The Court concluded a reasonable person would feel threatened and affirmed Woodrup's robbery conviction.

In *United States v. Gipson*, the defendant committed two bank robberies while wearing a black mask. He ordered the bank employees to the ground and came over the counter towards them before grabbing money.[16] The Eighth Circuit found this conduct constituted intimidation sufficient for a robbery conviction.

Other state courts have addressed this issue as well.

Under these jurisdictions' analyses, the defendant's conduct must be objectively

---

**12.** *Quoting Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky.2010) *overruling Merritt v. Commonwealth*, 386 S.W.2d 727 (Ky.1965) (any object meant to convince a victim that it is a gun or other deadly weapon and does so convince him is one).

**13.** 18 U.S.C.A. § 2113(a).

**14.** *United States v. Waldon*, 206 F.3d 597, 604 (6th Cir.2000) (citation and internal quotation marks omitted).

**15.** 86 F.3d 359 (4th Cir.1996).

**16.** 383 F.3d 689 (8th Cir.2004).

menacing. No special words or conduct are required. The courts consider the totality of the circumstances including the victim's response. However, consideration of the victim's fear is subjected to an objective test of whether a reasonable person in the teller's position would have perceived a threat of harm based on the defendant's conduct.

Missouri's Robbery, Second–Degree statute states "a person commits the crime of robbery in the second degree when he forcibly steals property."[17] "Forcibly steals" means "using or threatening the use of physical force upon another person...."[18] This is consistent with our KRS 515.030.

In *State v. Neal*, the Missouri Court of Appeals held "[t]he threat of physical harm need not be explicit; it can be implied by words, physical behavior or both."[19] Neal took money and alcohol from a convenience store after threatening the clerk, slamming his hands on the counter, and exposing himself to the clerk. The Court found this conduct sufficient to constitute robbery.

Oregon's Robbery, Third–Degree statute prohibits the use of or threatened use of physical force upon another person during a theft.[20] This is similar to KRS 515.030.

In *State v. Hall*, the defendant robbed a McDonald's restaurant by approaching a worker and telling her to empty the cash register drawer. The Supreme Court of Oregon held "if the context in which the demands were made supports a reasonable inference that the person implicitly threatened the immediate use of physical force if the victim did not comply, a trial court

does not err in denying a motion for judgment of acquittal...."[21]

Having reviewed the statutory language, afforded its terms their plain meaning and having examined case law from our own jurisdiction and others, we opine a jury can find a defendant guilty of Robbery, Second–Degree when the defendant demands money and in making the demand, acts aggressively toward inanimate objects nearby. While the victim's or victims' perception of the aggressive behavior as a personal threat to him/her is not controlling, it is a factor the jury can consider in the totality of the circumstances. Therefore, we affirm Birdsong's convictions for Robbery, Second–Degree and Persistent Felony Offender, First–Degree.

All sitting. ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER and SCOTT, JJ., concur. VENTERS, J., dissents by separate opinion in which MINTON, C.J., joins.

VENTERS, Justice, dissents by separate opinion:

I respectfully dissent. The Majority has concluded herein that the elements of second-degree robbery in KRS 515.030(1) were satisfied by Birdsong's aggressive demand for money, and his use of force against inanimate objects. Because he never used physical force against another person, and made no words or gesture to express or imply that he would use such force upon a person if his demand for money was denied, he did not commit second-degree robbery. The Majority cites a number of different meanings that the English language ascribes to the word

**17.** RSMo 569.030(1).

**18.** RSMo 569.010(1).

**19.** 36 S.W.3d 814, 816 (Mo.App.2001).

**20.** ORS 164.395(1).

**21.** 327 Or. 568, 966 P.2d 208, 211 (1998).

"threaten," which, in effect, acknowledges the ambiguity inherent in KRS 515.030(1)'s use of the word. Rather than construing the statute to incorporate all of the possible meanings of "threaten" as does the Majority opinion, I submit for reasons stated below that the General Assembly intended the word "threaten" as an active verb, describing the conduct of the accused. Used accordingly, to "threaten" means to express or imply by words or gestures, a warning that physical force will be employed to achieve an objective, for example, to enforce the demand for money. It is not, in the context of KRS 515.030(1), used as a passive verb describing one's state of being, as a source of danger perceived by another, for the possibility of some unpleasant consequence. The Majority's use of the latter definition to the facts of this case enables its conclusion that Birdsong's behavior and aggressive demand for money posed a threat of harm to those around him, even though he never expressed or implied with words or gestures in any conceivable way that physical force might be used upon anyone. I believe that interpretation is inconsistent with the legislative intent implicit in KRS 515.030, and therefore dissent.

The Majority leans heavily upon our opinion in *Lawless v. Commonwealth,* 323 S.W.3d 676 (Ky.2010). I respectfully submit that in *Lawless,* we applied the very same definition of "threaten" that I suggest should be applied here, although its application to the facts of *Lawless* compelled a different result. Lawless was subject to a second-degree robbery charge because she actively communicated an implied threat of physical force when she held her hand in her pocket and made gestures to imply that she had a gun. Such a gesture is without question a specific threat to use of physical force upon the persons present. In *Williams v. Commonwealth,* 721 S.W.2d 710 (Ky.1986), also

relied upon by the Majority, the robber said to the victims, "Do you want your life?" That too, is an unambiguous communication that expresses or implies an intention to do harm to a person if his demands were resisted. Birdsong made no such gestures and spoke no such words, nor did he otherwise express or imply any intention to use force against anyone. To be sure, Birdsong's conduct put those present in fear, but he did not "threaten the immediate use of physical force upon another person."

Prior to the 1974 enactment of the Kentucky Penal Code (KRS Chapters 500 through 534), robbery was defined by our common law as "the act of feloniously and forcibly taking from the person of another, goods or money *by violence or by putting him in fear.*" *Correll v. Commonwealth,* 317 S.W.2d 886 (Ky.1958) (Citations omitted; Emphasis added). Our pre-penal code law was consistent with the interpretation the Majority now reads into the Kentucky Penal Code. In *Williams,* 721 S.W.2d. at 712, we noted that the sections of the Model Penal Code (Article 222.1), which informed the drafters of the Kentucky Penal Code, used the following phrase as an element of robbery: "(b) threatens another with *or purposely puts him in fear of immediate serious bodily injury.*" (Emphasis added.) Thus, the Model Penal Code is consistent with our pre-penal code notion of robbery to the extent that both include among the elements of robbery, conduct putting someone in fear of injury. If, with conscious awareness of the Model Penal Code language and our common law definition, our legislature intended to retain within Robbery in the Second Degree (KRS 515.030) the element of putting another in fear, it would have used that essential language. By omitting that phrasing and using the verb "threatens" in conjunction with an-

other active verb, "uses" the General Assembly intended "threatens" to mean the expressed or implied communication by the perpetrator of an intent to use force, not merely any conduct that puts another person in fear.

Our criminal code attains fairness and justice because it attempts to establish objective criteria by which we must judge the conduct of others. It does so in the case of robbery second-degree by identifying the specific conduct that will subject one to punishment as a robber. The Majority conflates the objective act of making a threat to use physical force with the subjective effect that may be felt by others. An aggressive demand expressed under scary circumstances is not an objective substitute for the actual expression, by words or gestures, of threat to use immediate physical force. The Majority unhinges the conduct of the accused from objective requirements of our statute as it is now written, and binds it to the subjective response of others, contrary to the language of the statute. Where, along the sliding scale between a polite request for money to which one is not entitled and the aggressively hostile and frightening demand does theft or attempted theft become robbery? Does the vagrant in a dark street at night become a robber if, because of his scary countenance, a passer-by is too frightened to deny his request for a handout? The Majority opinion cannot answer that question, and we are left with a case-by-case process to determine what circumstances may authorize a robbery prosecution. Prosecutors, judges, and juries, will differ in their respective views, and so we can have uneven or discriminatory prosecution. The answer can be found where it ought to be found, in the statute. If the vagrant, by words or gestures, expresses or implies an intention to use physical force if his request is denied, then he is a robber. The conduct qualify-ing him as such can be ascertained from the clear, concrete and objective evidence, and is not dependent upon the degree of fear that one might infer from his presence.

Prior to our decision in *Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky.2010), we had allowed the objective element of "deadly weapon" for first-degree robbery to be satisfied by the victim's subjective fear that the robber had a weapon, even when there was no evidence that a weapon actually existed. After years of adhering to our common law conception of armed robbery despite clear statutory language to the contrary, in *Wilburn* we restored the objectivity to robbery first degree by requiring evidence that an actual, not imaginary, weapon was used. We recognized in *Wilburn* that no amount of intimidation by the robber can turn a finger in the pocket into a gun. By the same token, no amount of fear on the part of the victim can turn an aggressive demand for money into a specific threat of immediate force against a person. As we did in *Wilburn* with the deadly weapon element of robbery first degree, we should now remove the vestiges of our common law past from second-degree robbery, and recognize that the statutory language "threaten[ing] the immediate use of physical force upon a person" does not mean "putting another in fear." It requires an expressed or implied threat, communicated by gestures or words, of force upon another person. A frightfully aggressive appearance from which one might infer the use of such force does not satisfy the requirement of our statute.

For the foregoing reasons, I respectfully dissent. MINTON, C.J., joins.