RENDERED: DECEMBER 19, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0499-MR

JOHN RAY WILLIAMS                                           APPELLANT

V.

ON APPEAL FROM GRAVES CIRCUIT COURT
HONORABLE JOSEPH W. CASTLEN, III, JUDGE
HONORABLE KEVIN D. BISHOP, JUDGE
NOS. 21-CR-00048 & 21-CR-00416

COMMONWEALTH OF KENTUCKY                            APPELLEE

**OPINION OF THE COURT BY JUSTICE BISIG**

**AFFIRMING**

A jury of the Graves Circuit Court convicted Appellant John Ray Williams of retaliating against a participant in the legal process and of being a first degree persistent felony offender (PFO). He received the maximum sentence of twenty years, and now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). Following a careful review, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In November 2020, Appellant Williams was convicted in Graves Circuit Court on a charge of first degree sexual abuse, victim under twelve. The charge stemmed from abuse Williams perpetrated against his granddaughter, L.W. L.W. resided primarily with Williams' former daughter-in-law Leslie. Leslie testified against Williams at the sexual abuse trial.

Around four days after Williams' conviction in the sexual abuse trial, Leslie received a postcard from Williams in the mail at her home with the following message:

> Leslie, hi how are you doing?  Things going alright?  I'm doing alright considering you have to watch for all of the snakes, they are everywhere.  Wish me luck in the Appeals Court, we might get to do it all over again.
>
> By the way, I found this and thought you might want to have it, [Leslie's date of birth and social security number].  Several other people wanted it.  Good luck in the future.  In the end, we all get what we deserve.
>
> Lots of love always & forever.
>
> John
>
> P.S. Give the kids a big kiss and hug for me.

The handwriting on the postcard was consistent with handwriting by Williams that Leslie had seen in the past.

Leslie found Williams' comments in the postcard threatening.  The comment regarding Williams' appeal and the possibility of doing another trial was worrisome because it had been difficult to testify at the sexual abuse trial. She likewise found his reference to getting what was deserved a threat.  Leslie was also disgusted with the P.S. regarding giving the kids a kiss and a hug, given Williams' conviction only a few days prior for sexually abusing L.W.  She further worried about what might be done with her birth date and social security number.

Leslie contacted law enforcement regarding the postcard, and Williams was ultimately charged with retaliating against a participant in the legal

2

process and being a first degree persistent felony offender. Williams' defense at trial was that the Commonwealth did not prove malicious intent, because Williams may only have been trying to help Leslie by letting her know her personal information had been divulged.

The jury found Williams guilty on both charges and recommended the maximum sentence of twenty years. The trial court sentenced Williams accordingly, and he now appeals to this Court as a matter of right.

## ANALYSIS

Williams raises two issues for review by this Court: (1) whether the trial court erred in allowing the Commonwealth to inform the jury that Williams had been convicted of sexually abusing L.W.; and (2) whether Williams was entitled to a directed verdict on the retaliation charge. We review each issue in turn, providing additional facts as necessary.

### I. Proof Of Williams' Prior Conviction For Sexually Abusing L.W. Was Admissible Under KRE[1] 404(b).

Before trial, the Commonwealth filed a motion pursuant to KRE 404(b) seeking to admit evidence of Williams' prior conviction for sexually abusing L.W. The Commonwealth argued the jury needed to be informed not just generally that Leslie had been a participant in a prior trial, but also specifically that the prior trial had resulted in Williams' conviction for sexually abusing L.W. The Commonwealth asserted the nature of Williams' sexual abuse conviction would provide necessary context to demonstrate that his comment

---

[1] Kentucky Rules of Evidence.

asking Leslie to give a kiss and a hug to her children for him was threatening. Williams responded that the jury should only be informed there had been a previous trial, but not that the subject of the trial had been his sexual abuse of L.W.

The trial court found the prior conviction admissible under KRE 404(b) because it was inextricably intertwined with Williams' comment asking Leslie to give her kids a kiss and a hug for him, and because its probative value outweighed its prejudicial effect. The trial court therefore ruled the Commonwealth could inform the jury that Williams had been convicted of sexually abusing L.W., but could not elicit any further detail regarding that abuse.

At trial, the prosecution informed the jury during its opening statement that Williams had been convicted of sexual abuse, and mentioned the conviction three more times. Leslie also testified to Williams' conviction. In its closing statement, the prosecution again pointed to the prior sexual abuse conviction as evidence that Williams' postcard was intended to threaten retaliation against Leslie for her testimony in the prior trial.

Williams now contends on appeal that the admission of his prior conviction for sexually abusing L.W. violated KRE 404(b). Williams objected before and during trial to admission of this evidence, and his allegation of error is therefore preserved. KRE 103(a)(1).

Under KRE 404(b), evidence of other crimes, wrongs, or acts is "not admissible to prove the character of a person in order to show action in

4

conformity therewith." However, the Rule provides two exceptions. First, evidence of other crimes, wrongs, or acts may be admissible if "offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1). Second, such evidence may also be admissible if it is "so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b)(2).

In determining whether to admit evidence of other crimes, wrongs, or acts under KRE 404(b), a trial court must consider the three factors of relevance, probativeness, and prejudice set forth in *Bell v. Commonwealth*, 875 S.W.2d 882 (Ky. 1994). That is, the trial court must consider 1) whether the proffered evidence is relevant for some purpose other than to prove the defendant's criminal disposition, 2) whether evidence of the other crime, wrong, or act is sufficiently probative of its commission by the defendant, and 3) whether the potential prejudice from admission of the proffered evidence substantially outweighs its probative value. *Bell*, 875 S.W.2d at 889-91. In considering these factors, the trial court "must apply [KRE 404(b)] cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime." *Id.* at 889. We review a trial court's decision to admit evidence under KRE 404(b) for abuse of discretion. *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007).

5

Here, we find no abuse of discretion in the trial court's admission of Williams' prior conviction for sexually abusing L.W. With respect to the first *Bell* factor of relevance, Williams' prior conviction for sexually abusing L.W. was relevant to demonstrate the menacing nature of his comment regarding kissing and hugging L.W., and thus to proving his retaliatory intent in sending Leslie the postcard.

To obtain a retaliation conviction, the prosecution must prove, among other things, that the defendant's conduct against the participant in the legal process was "related to the performance of a duty or role played by the participant in the legal process." KRS 524.055(3). In other words, the prosecution must prove that the defendant intended his conduct as retaliation for the victim's participation in the legal process. However, as in other contexts requiring proof of retaliatory intent, there will not always be direct evidence of a defendant's criminal intent to retaliate against a participant in the legal process. *See Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003) ("Like most retaliation cases, there is no direct evidence of retaliation here . . . ."). Absent such direct "smoking gun" evidence, the prosecution must rely on indirect evidence to prove the defendant's retaliatory intent, such as the circumstances surrounding the commission of the crime:

> Seldom is there direct evidence of a defendant's state of mind, but direct evidence is not required. As we recently reiterated in *Rogers v. Commonwealth*, 315 S.W.3d 303 (Ky. 2010), state of mind—intent in that case—may be established by circumstantial evidence. That evidence includes the defendant's "actions preceding and following the charged offense," . . . as well as the defendant's knowledge and the surrounding circumstances.

6

*Quisenberry v. Commonwealth*, 336 S.W.3d 19, 36 (Ky. 2011) (citations omitted).

Here, the Commonwealth contended that Williams' postcard was a retaliatory threat to harm Leslie by divulging her birth date and social security number. Notably, however, the postcard contained no explicit threat that Williams would divulge the relevant information, nor did it contain any other direct statement of retaliatory intent. Taken literally, the postcard stated that Williams had Leslie's birth date and social security number, that other people wanted it, and that "we all get what we deserve." Williams thus argued at trial that the prosecution had not proven malicious intent, and that the postcard could have simply been intended to notify Leslie that her personal information had been compromised.

Given Williams' position at trial and the arguable lack of direct evidence to the contrary, the Commonwealth was left to prove Williams' retaliatory intent by pointing to the surrounding circumstances in which he sent the postcard. One such circumstance was that Williams had been convicted of sexually abusing L.W. only four days before he asked Leslie in his postcard to give L.W. a kiss and a hug for him. Ordinarily of course such a statement by a grandfather would be entirely innocuous. But given the context of Williams' very recent conviction for sexually abusing L.W. and the evident distress such a statement by him would undoubtedly cause, the postcard takes on a far more sinister light. As such, when considered in the broader context of Williams' recent conviction for sexually abusing L.W., his request that she be given a kiss

7

and a hug from him made it more probable that the postcard was intended as a retaliatory threat than mere notice that Leslie's personal information had been compromised. Thus, Williams' prior sexual abuse conviction was relevant to the element of retaliatory intent required for the Commonwealth to obtain a conviction under KRS 524.055. *See* KRE 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). It was thus also relevant for a permissible purpose under KRE 404(b)(1), namely as proof of intent.

Williams does not dispute that the second element of the *Bell* test, probativeness, is satisfied because there is no question he was convicted of sexually abusing L.W. Williams does however argue that the third element of the *Bell* test is not satisfied because the sexual abuse conviction was more prejudicial than probative. We disagree. First, because of the nature of the charge against Williams, the jury had to be informed there had been *some* prior legal proceeding for the Commonwealth to demonstrate that Leslie had been a "participant" in that proceeding as required to obtain a conviction. Second, the trial court appropriately limited the Commonwealth to advising the jury that Williams had been convicted of sexually abusing L.W., and barred the admission of any further information or details regarding that crime.

Admittedly, admission of Williams' prior conviction for sexual abuse was unquestionably prejudicial. However, the trial court properly limited the prejudice to the extent possible. This limitation regarding specific details

8

reduced any potential prejudice while still allowing the jury to view the statements in a broader context. In addition, the prejudice to Williams from admission of his prior conviction was far outweighed by the strong probative value of that evidence. As noted above, the Commonwealth was required to prove retaliatory intent, and Williams' shocking inclusion of such a malevolent and distressing statement was strong evidence that he intended the postcard as an attack rather than as mere notice that Leslie's personal information had been compromised. Thus, because Williams' prior conviction for sexually abusing L.W. was relevant, probative, and not unduly prejudicial, the trial court did not abuse its discretion in admitting evidence of that conviction at trial.

## II. Williams Was Not Entitled To A Directed Verdict.

Williams next argues he was entitled to a directed verdict on the retaliation charge for two reasons: 1) the jury instructions improperly allowed a finding of guilt on the basis of conduct that "could cause" damage, while the statute criminalizes only conduct intended to cause damage; and 2) a threat of damage to Leslie's electronic assets was not damage to "tangible property" as required by the statute.

Williams acknowledges his motion for directed verdict before the trial court did not identify these specific issues and that this allegation of error is therefore unpreserved. *See* CR[2] 50.01; *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020) (holding that to preserve alleged error in denial of motion

---

[2] Rules of Civil Procedure.

9

for directed verdict, a criminal defendant must "identify the particular charge the Commonwealth failed to prove, and must identify the particular elements of that charge the Commonwealth failed to prove."). He therefore requests palpable error review. RCr[3] 10.26.

> In determining whether an error is palpable, we consider

> > "whether on the whole case there is a substantial possibility that the result would have been any different." To be palpable, an error must be "easily perceptible, plain, obvious and readily noticeable." A palpable error must be so grave that, if uncorrected, it would seriously affect the fairness of the proceedings. "It should be so egregious that it jumps off the page . . . and cries out for relief."

*Davis v. Commonwealth*, 620 S.W.3d 16, 30 (Ky. 2021) (citations omitted). Even when an error is palpable, relief is warranted only where it results in manifest injustice. *Commonwealth v. Caudill*, 540 S.W.3d 364, 367 (Ky. 2018). An error results in manifest injustice if it "so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Conrad v. Commonwealth*, 534 S.W.3d 779, 783 (Ky. 2017) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006)). The conviction of a defendant absent sufficient proof of an essential element of the charge is both a violation of due process and palpable error. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (noting that "an essential of the due process guaranteed by the Fourteenth Amendment" is "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of

---

[3] Rules of Criminal Procedure.

the existence *of every element of the offense.*") (emphasis added); *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836-37 & n.10 (Ky. 2003) ("[A] conviction in violation of due process constitutes '[a] palpable error which affects the substantial rights of a party' which we may consider and relieve though it was insufficiently raised or preserved for our review.") (quoting *Perkins v. Commonwealth*, 694 S.W.2d 721, 722 (Ky. App. 1985)); *Commonwealth v. Goss*, 428 S.W.3d 619, 627 (Ky. 2014) ("A failure to grant a directed verdict based on the obvious inapplicability of a criminal statute or the insufficiency of the proof is necessarily palpable error . . . .").

The standard for a trial court's consideration of a criminal defendant's motion for directed verdict is well-established:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). As a corollary, "the trial court must grant a directed verdict when, taking the evidence in the light most favorable to the Commonwealth, it would be clearly unreasonable for the jury to find guilt." *Birdsong v. Commonwealth*, 347 S.W.3d 47, 49 (Ky. 2011). On appeal, our standard of review is "if under the evidence as a whole, it would be clearly unreasonable for the jury to find guilt, only then is a defendant entitled to a directed verdict." *Id.* (quoting *Benham*, 816 S.W.2d at 187).

11

Williams first argues that the jury instructions impermissibly lowered the Commonwealth's burden by requiring only proof that Williams' conduct *could* have resulted in damage to Leslie's tangible property, rather than requiring proof he engaged in conduct *intended* to cause damage. We set forth in full the trial court's instruction on the retaliation charge:

> You will find the Defendant guilty of Retaliating Against A Participant in the Legal Process under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:
>
> A. That in this County, on or about November 9, 2020, and before the finding of the Indictment herein, he mailed a postcard to Leslie Williams threatening to release her birth date and social security number, which could cause damage to her tangible property;
>
> B. That his intent in doing so was to retaliate against Leslie Williams for her having testified against him in a jury trial held November 4 and 5 of 2020;
>
> AND
>
> C. That his acts related to Leslie Williams being a witness in the legal process referenced above.

At first blush, Williams' argument appears to have some merit. There is of course a difference between a defendant simply engaging in conduct that *could* cause damage and a defendant engaging in conduct with the specific *intent* to cause damage. However, when considered as a whole, it is plain the instructions required the jury to find that Williams engaged in conduct *intended* to damage Leslie's property. Beyond finding that Williams engaged in conduct that *could* damage Leslie's property, the instructions also required the jury to find that Williams 1) mailed the postcard as a threat to release Leslie's

12

birth date and social security number, and 2) that he did do with an intent to retaliate against her. Quite simply, there is no difference between the findings required by the instructions that Williams intended to retaliate against Leslie by threatening conduct that could damage her property, and a finding that he retaliated by threatening conduct intended to damage her property. Put differently, the finding of an intention to retaliate by conduct capable of damaging property is sufficient to also encompass a finding of intention to damage property, as there would be no underlying retaliatory purpose if the conduct was *not* also intended to damage the property. Thus, while the trial court's instruction was not an exemplar, it was nonetheless sufficient to require a finding that Williams intended to damage Leslie's property. As such, the instruction does not warrant reversal.

Williams' second contention is that he was entitled to directed verdict because the Commonwealth failed to prove he intended to damage Leslie's *tangible* property. As noted above, KRS 524.055 requires proof the defendant's conduct damaged or was intended to damage the victim's "tangible property." KRS 524.055(1).[4] Williams asserts the Commonwealth's theory was that Williams intended to damage Leslie by divulging her personal information, resulting in theft of her identity, improper accessing of her bank account, transferring property, or taking out a loan or obtaining a credit card in her name. Williams argues each of these involve only damage to electronic assets

___

[4] Conviction may also be obtained by proof of the defendant's causing or intending to cause bodily injury. *Id.*

13

rather than "tangible" property, and therefore cannot sustain a conviction for retaliation under the statute.

Again, we disagree. First, the divulging of sensitive personal information can result in damage to "tangible" property in the strict sense of that term, *i.e.* physical property capable of being touched. For example, one might use sensitive personal information to access the victim's home utility account and cease service, resulting in the spoiling of food in the victim's refrigerator. Or the theft of funds from the victim's bank account might result in an inability to make mortgage payments, resulting in the loss of the victim's home in foreclosure proceedings. In other words, the fraudulent accessing of one's electronic accounts plainly can result in physical damage to a victim's "tangible" property.

Second, we do not in any event find that the legislature intended such a strict interpretation of the term "tangible property" as used in the statute. The evident intent of the statute is to prevent the use of retaliation as retribution or to chill participation in legal proceedings. We must interpret "tangible" consistent with this evident intention. *Samons v. Ky. Farm Bureau Mut. Ins. Co.*, 399 S.W.3d 425, 429 (Ky. 2013) ("We have repeatedly stated that we 'must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy.' And the intent of the General Assembly 'shall be effectuated, even at the expense of the letter of the law.'") (citations omitted). We thus do not find that "tangible property" as used in the statute means only property physically capable of being touched, but rather

14

that the property at issue be sufficiently substantial that its damage might constitute retribution or dissuade a reasonable person from participating in the legal process. Plainly, one's bank accounts and other electronic monetary assets constitute such "tangible property," as that term is used in the statute, and Williams' conduct thus threatened damage to "tangible property."

Moreover, we also see little reason the General Assembly would have intended only to prohibit retaliation involving damage to purely physical assets, while allowing retaliation involving damage to electronic assets. Such an interpretation would result in the absurdity that damaging a low value physical object would be criminal, while causing damage to electronic assets of high monetary value would be entirely permissible. This is an absurd interpretation we do not afford the language used in the statute. *See Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017) ("In interpreting a statute, '[w]e have a duty to accord to words of a statute their literal meaning *unless to do so would lead to an absurd or wholly unreasonable conclusion*.'") (quoting *Cosby v. Commonwealth*, 147 S.W.3d 56, 59 (Ky. 2004)) (emphasis added). Thus, Williams was also not entitled to a directed verdict on grounds he did not cause or intend to cause damage to property capable of physical touch.

## CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence of the Graves Circuit Court.

All sitting. VanMeter, C.J.;Conley, Keller, Lambert, and Nickell, JJ., concur. Thompson, J., concurs in result only.

15

COUNSEL FOR APPELLANT:

Emily Holt Rhorer
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General